**Larry J. MECHLER,**
**Plaintiff-Appellant,**

v.

**Raymond K. PROCUNIER, Director,**
**Texas Department of Corrections, et**
**al., Defendants-Appellees.**

No. 84–1252.

United States Court of Appeals,
Fifth Circuit.

March 15, 1985.

Harry A. Nass, Jr., Ruben Montemayor, San Antonio, Tex., for plaintiff-appellant.

Jim Mattox, Atty. Gen., Charles A. Palmer, Laurie A. Booras, Asst. Attys. Gen., Austin, Tex., for defendants-appellees.

Before CLARK, Chief Judge, GAR-WOOD, and JOLLY, Circuit Judges.

CLARK, Chief Judge:

Larry Mechler appeals from a judgment denying a petition for a writ of habeas corpus. The principal issue on appeal is whether the introduction at trial of the preliminary hearing testimony of an unavailable witness denied Mechler his constitutional right to confront witnesses against him. We hold that Mechler's constitutional rights were not violated and affirm denial of the writ.

I

Larry Mechler is serving a 75-year prison sentence for murder. After exhausting his state court remedies, Mechler filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. In his petition, Mechler alleges that introducing into evidence the transcript testimony of Frances Wise, given at the preliminary hearing (in Texas called the "examining trial"),[1] violated his sixth amendment right to confront witnesses against him. Mechler asserts his right of confrontation was violated because 1) the state failed to adequately prove Wise was unavailable to testify, and 2) his attorney was denied an effective opportunity to cross examine Wise at the hearing. The case was referred to a magistrate, who, after an evidentiary hearing, recommended granting habeas corpus relief and a new trial. On review, the district court denied relief. Mechler filed a timely notice of appeal and was granted a certificate of probable cause to appeal by the district court.

II

The underlying facts are not substantially in dispute. Mechler's retained counsel had travelled to Uvalde, Texas to appear at Mechler's bail hearing. Upon arrival, counsel was surprised to learn that Frances Wise, the only eyewitness to the murder, was leaving the state the next day. She was moving to Missouri. Upon learning this, Mechler's counsel requested a preliminary hearing be held immediately. The hearing was held, and Wise testified as the state's witness concerning her knowledge of the murder.

Counsel subsequently learned that autopsy and ballistics reports had been prepared approximately one week before the preliminary hearing. However, at the time of the hearing counsel had not seen these reports and was unaware of their existence.

Mechler asserts that without knowing the contents of these reports his counsel was unable to effectively cross-examine Wise at the preliminary hearing. These reports indicated both a .357 caliber bullet and a .38 caliber bullet were taken from victims who were at the murder scene.[2] Because Mechler owned a .357 magnum pistol and argued self defense at trial, he claims these reports bolstered his defense and were essential to effective cross-examination of Wise on the critical question of whether other guns were present at the scene of the crime. He asserts that the absence of effective cross-examination constitutionally precluded admission of Wise's testimony at trial.

■ The primary object of the sixth amendment was to prevent the use of *ex parte* statements against an accused who has no opportunity to confront and cross-examine the witness. It guarantees the accused an opportunity to test the recollection and sift the conscience of the witness. *California v. Green*, 399 U.S. 149, 157–58, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970). In *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the United States Supreme Court reviewed the relationship between the confrontation clause and the hearsay rule. The Court noted

---

1. Wise's preliminary hearing testimony was admitted at trial pursuant to Tex.Crim.Proc.Code Ann. art. 39.01 (Vernon 1979).

2. The bodies of Bennie and Joe Perales were found dead at the scene. Frances Wise witnessed Mechler fire the shot that killed Bennie. Mechler was tried and convicted only for the death of Bennie.

that historically the focus of concern with absent witnesses has been to insure their statements demonstrate "indicia of reliability." Thus, the Court devised a two-prong test in *Ohio v. Roberts,* under which the confrontation clause would operate to restrict admissible hearsay in two ways: 1) the party seeking to introduce the hearsay statement must demonstrate the unavailability of the declarant who made the statement, and 2) the statement must bear sufficient "indicia of reliability." *Id.* at 66, 100 S.Ct. at 2539.

### A

Wise's "availability" is the first issue. Mechler claims the state failed to prove it made a good faith effort to secure Wise's presence at trial. Therefore, because Wise was not technically "unavailable," use of her previous testimony at trial was constitutionally prohibited.

■ In *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), the Supreme Court stated "there may be some justification for holding the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demand of the confrontation clause where the witness is shown to be actually unavailable...." *Id.* at 725–26; 88 S.Ct. at 1322. A witness is "unavailable" for purposes of the confrontation clause, only if the government makes a good faith effort to obtain his or her presence. *Id.* at 724–25; 88 S.Ct. at 1322. Upon reviewing the record, we find Wise was constitutionally unavailable to testify at trial, and the state demonstrated adequate, though unsuccessful, attempts to secure her presence.

At the preliminary hearing, Wise stated under oath that she intended to move out-of-state the next day. The prosecuting attorney testified at trial that approximately one year earlier he had received a telephone call from Wise who told him her address in Danville, Illinois. Prior to trial, the prosecutor telephoned Wise at the number she had given him and was told Wise had not been seen "in some time." The state was unsuccessful in its efforts to locate and serve Wise in either Illinois or Texas.

This case was tried in December, 1977. Authorities made at least five separate attempts to compel Wise's attendance at trial. Subpoenas for her presence were issued in Medina County, Texas in November 1976, June 1977 and October 1977. The Sheriff of Medina County testified he could not locate Wise within his jurisdiction. Judge Jack Woodley of the 38th District of Texas issued two requests under the Uniform Act to Secure Attendance of Out-of-State Witnesses. Tex.Crim.Proc.Code Ann. art. 24.28 (Vernon 1966). These requests, issued in January and in November of 1977, were forwarded to authorities in Vermilion County, Illinois, where Wise had told the prosecutor she lived. Illinois authorities were unable to locate and serve her. Efforts to procure Wise's presence included application for and receipt of over $300 from the state comptroller to pay for Wise's travel expenses.

■ In sum, Wise, under oath, expressed an intent to move to another state. Her last reported address was Danville, Illinois. Nothing in the record suggests Wise returned to Texas. All efforts to locate and serve Wise in the county of her last known address and in the county where the offense occurred were unsuccessful. The record clearly reflects that reasonable efforts were made to secure Wise's presence at trial. These attempts were sufficient to prove an adequate good faith effort, and that Wise was therefore unavailable to testify at Mechler's trial.

### B

Besides contesting Wise's availability, Mechler claims he was denied an effective opportunity to cross-examine Wise because his attorney had not seen the ballistics and autopsy reports prior to the preliminary hearing. The narrow question Mechler asks us to decide is whether de minimis questioning or ineffective cross-examination satisfies the sixth amendment right to confrontation. In *Ohio v. Roberts,* the Su-

preme Court expressly declined to decide this issue, 448 U.S. at 70, 100 S.Ct. at 2541, and we find no Fifth Circuit precedent on point. However, because we find that cross-examination of Wise was neither de minimis nor ineffective, we also expressly decline to reach that issue in this case. Rather, we find that Wise's testimony bore sufficient indicia of reliability to permit its admission in complete conformity with the sixth amendment.

Under the second prong of the *Roberts* test, the confrontation .clause is not abridged by the admission of hearsay, provided it bears sufficient "indicia of reliability." To determine whether cross-examination of Wise was effective and reliable we look more closely at the Supreme Court's decision in *Ohio v. Roberts*, a case which factually resembles Mechler's case.

In *Roberts*, the witness, Anita, failed to appear despite the issuance of five separate subpoenas directed to her parents' home, which was her last known address. Her parents had not spoken with Anita in seven or eight months and did not know how to contact her, even in an emergency. They knew only that she was travelling somewhere outside the state. The Supreme Court found her testimony admissible because it bore adequate "indicia of reliability," even though, technically, she had not been cross-examined at the preliminary hearing. Anita was a witness for the defense; technically, her testimony was direct examination. However, her testimony so resembled cross-examination in character and substance that the Court found it substantially complied with the purposes behind the confrontation clause.

■ Wise's testimony, like that at question in *Roberts*, was tested "with the equivalent of significant cross-examination." 448 U.S. at 70, 100 S.Ct. at 2541. As in *Roberts*, the questioning of Wise clearly partook of cross-examination as a matter of *form*, replete with leading questions, "the principal tool and hallmark of cross-examination." *Id.* at 70–71, 100 S.Ct. at 2541. In addition, Mechler's counsel's questioning comported with the principal *purpose* of

cross-examination: "to challenge whether the declarant was sincerely telling what [s]he believed to be the truth, whether the declarant accurately perceived and remembered the matter [s]he related, and whether the declarant's intended meaning is adequately conveyed by the language [s]he employed." *Id.* at 71, 100 S.Ct. at 2541.

Unlike *Roberts*, Mechler's case leaves no doubt, but that the questioning was cross-examination, in form, substance, purpose and name. Wise was subjected to cross-examination of a more truth-exacting nature than was Anita, in *Roberts*. Whereas Anita was a defense witness, questioned only by the defense, Wise was the state's witness questioned by both the prosecution and defense. Furthermore, in *Roberts*, there was no inkling that Anita would be unavailable for trial. In contrast, Mechler's counsel was fully aware of Wise's intent to move out-of-state, and specifically requested the preliminary hearing to preserve her testimony. Although perhaps not as fully prepared as he would have been at trial, Mechler's counsel made a tactical decision to question Wise immediately, knowing his effort probably was hampered by the suddenness of the events. This is not to say Mechler's counsel set about to deliberately waive his client's sixth amendment right. It is appropriate, however, to note that counsel was aware he was proceeding in an effort to preserve the testimony of a witness that might not be available for trial. The course of questioning, as reflected in the transcript, indicates counsel was aware this examination was more than just part of a hearing to establish probable cause.

■ Mechler claims the suddenness with which the preliminary hearing was called prevented a background check on Wise for purposes of thorough impeachment. To make an effective, reliable inquiry, counsel must be permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. *Davis v. Alaska*, 415 U.S. 308, 317–18, 94 S.Ct. 1105, 1110–11, 39

L.Ed.2d 347 (1974). A review of the transcript shows Wise was more than adequately impeached by questioning from Mechler's counsel. He adeptly brought out facts concerning her morals and capacity for observation. She admitted she was a topless dancer, and that she had adulterous sexual relations with Mechler the night of the murder. She told of an argument between the deceased's brother and Mechler, apparently over Wise. Wise had also argued with the deceased's brother who slapped her. She frequently smoked marijuana and had been drinking alcohol that night. Furthermore, her glasses had fallen off when she was slapped, impairing her vision during a portion of the altercation. All of this information, which was read to the jury, sufficed to enable an appraisal of her bias, motives, credibility, and dependability. Thus, Wise's testimony afforded the trier of fact a satisfactory basis for evaluating the truth of her prior statements. *Roberts*, 448 U.S. at 65–66, 100 S.Ct. at 2539; *California v. Green*, 399 U.S. at 161, 90 S.Ct. at 1936.

Mechler further claims that if his counsel had seen the autopsy and ballistics reports, he would have attempted to impeach Wise's statement that she had seen no other guns besides Mechler's. Ultimately, this is the point upon which Mechler's habeas claim hinges. The heart of his claim of ineffective cross-examination is that his counsel was unaware of documentary evidence establishing the existence of two types of bullets which suggested the possibility that two guns were at the scene. No other pertinent parts of Wise's testimony are disputed. However, the prosecutor asked Wise whether she had seen another gun that night, and she said no. We doubt Mechler's counsel could have expanded upon this line of questioning in any way beneficial to Mechler's defense. The question of whether Wise knew about a second gun is a simple one. Even with the benefit of hindsight afforded by a full transcript, counsel has not demonstrated how addition-

al questioning on this subject would have aided Mechler's defense. Wise either saw a second gun or she did not. She said she did not. We do not deal with testimony in which the witness was not examined about a pertinent fact. We say only that no prejudice to Mechler's sixth amendment rights resulted from the fact the critical question was asked by the prosecution rather than the defense.

■ As was the case in *Roberts*, Mechler's case is basically one in which the defendant tells the jury one story, and the absent witness tells another. The jury, after weighing all the facts and testimony in evidence, chose to believe the testimony of the absent witness. Of course, one critical goal of cross-examination is to draw out discrediting demeanor to be viewed by the fact finder. *Roberts*, 448 U.S. at 63 n. 6, 100 S.Ct. at 2537 n. 6. In Mechler's case, however, other facts and testimony in evidence bolstered Wise's story. No other gun was ever found at the scene. Another witness, who saw Mechler fire the gun, but did not actually see him fire the fatal shot, never saw another gun. Only Mechler mentioned the possible existence of a second gun. According to the ballistics report, Mechler's .357 magnum was capable of firing both the .38 caliber and .357 caliber bullets found at the scene. Mechler has not suggested Wise took any part in the crime. He has not established any ulterior motives she may have harbored for not telling the truth.[3] To the contrary, Wise's testimony concerning her relations with Mechler, suggests any bias she may have had would be in his favor. We recognize that Wise's testimony, as the only witness to the fatal shot, was important to the prosecution's case. *See Douglas v. Alabama*, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965). However, her story was not totally unsupported. Credibility did not turn on her words alone. The jury

---

**3.** Wise turned Mechler's gun over to the police. Mechler suggests her involvement in the chain of custody of the murder weapon may have

given her a motive to lie. This vague implication is unsupported by any other fact. We reject it as untenable.

**1300**

could logically infer from other proof whether Wise's version of the facts was more likely true than Mechler's.

■ Finally, the setting in which Wise's testimony was given provided guarantees of trustworthiness. It occurred under circumstances closely approximating those that surround a trial. Wise was under oath; Mechler was present and represented by counsel. The proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearings. *See California v. Green*, 399 U.S. at 165, 90 S.Ct. at 1938; *Ohio v. Roberts*, 448 U.S. at 69, 100 S.Ct. at 2540. These factors contribute to the reliability of prior testimony. The Supreme Court concluded such factors "provide substantial compliance with the purposes behind the confrontation requirement." *Id.* We note further, that Mechler's counsel was not significantly limited in any way in the scope or nature of his cross-examination. *See Id.* at 71, 100 S.Ct. at 2542.

The use of prior recorded testimony in this case did not violate the accused's sixth amendment right to confrontation because the two-prong test set out in *Ohio v. Roberts* was satisfied. The state made a good faith effort to obtain Wise's presence at trial. Mechler's counsel cross-examined Wise at the preliminary hearing to such an extent as to render her prior recorded testimony sufficiently reliable to afford the trier of fact a satisfactory basis for evaluating the truth of her statement. The circumstances favoring admission of Wise's testimony are bolstered by counsel's knowledge of her future unavailability. Nothing appears in the autopsy and ballistics reports which adds any new topics of examination or suffices to impeach Wise. Because it cannot be said that Mechler lacked an adequate opportunity to effectively confront this witness, we find no sixth amendment violation and affirm the district court's denial of Mechler's habeas petition.

AFFIRMED.