561 So.2d 801 (1990)
STATE of Louisiana, Appellee,
v.
Kenneth Wayne MAGOUIRK, Appellant.
No. 21,519-KA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 1990.
*803 Kidd & Kidd by Paul Henry Kidd, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, James A. Norris, Jr., Dist. Atty., Joseph T. Mickel, John P. Spires, Richard A. Sherburne, Jr., Asst. Dist. Attys., Monroe, for appellee.
Before HALL, C.J., and NORRIS and LINDSAY, JJ.
HALL, Chief Judge.
Defendant, Kenneth Wayne Magouirk, was convicted of manslaughter following a jury trial for second degree murder in the death of Katherine Thomas. The facts of the case are set forth in our previous opinion, State v. Magouirk, 539 So.2d 50 (La. App. 2d Cir.1988). On appeal, defendant's conviction was initially reversed and the matter remanded for a new trial. This court concluded that defendant was denied his right to confrontation by the admission of former testimony of Alfred Durbyn, defendant's cellmate, that defendant had confessed to the murder. On rehearing, the state raised for the first time the issue of defendant's waiver of his right to confrontation by reason of defendant's misconduct which caused Durbyn to refuse to testify at trial. We granted rehearing on this issue and remanded to the trial court for an evidentiary hearing to determine:
(1) Whether the state knew or should have known at the time of trial of any of the evidence sought to be introduced at the remand. Should the trial court determine that the state was aware or should have been aware of the reason why Mr. Durbyn failed to testify and yet did not attempt to demonstrate the defendant's conduct then a determination may be made that the state waived its right to address the waiver issue on remand.
(2) Whether Durbyn's original testimony is "surrounded with sufficient particularized guarantees of trustworthiness." U.S. v. Mastrangelo, 693 F.2d 269 (La. App. 2d Cir.1982), cert.denied 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 343 (1984).
(3) Whether the defendant threatened or engaged in other misconduct designed to prevent Durbyn's testimony at trial, and whether the state has demonstrated by a preponderance of the evidence that the defendant has waived his right of cross-examination.
After the hearing, the trial court found that the state neither knew nor should have known that the reason for Durbyn's refusal to testify was threats by the defendant; that the state had not waived its right to assert the defendant's waiver by misconduct; that Durbyn's former testimony was surrounded by sufficient guarantees of trustworthiness; and that the defendant waived his right to confrontation of Durbyn by engaging in misconduct to procure Durbyn's silence at trial. Defendant appeals the ruling of the trial court assigning eight errors. Seven of defendant's assignments of error were restated into one and argued as subparts of Assignment of Error No. 2. For reasons expressed herein, we affirm the ruling on remand and the defendant's conviction.

ASSIGNMENTS OF ERROR 2 THROUGH 8
The trial court erred in not holding that the state waived its right to address the waiver issue on remand and ruling that the appellant waived his right to cross-examine Alfred Durbyn.
In his original Assignment of Error No. 2 and in brief, defendant argues that the trial court erred in applying the wrong burden of proof by using the preponderance of the evidence as opposed to clear and convincing evidence in making its ruling. This assignment of error is without merit.
*804 On rehearing, this court specifically instructed the trial court to apply the preponderance of the evidence standard for proof of waiver by misconduct. Noting disagreement among the federal circuits on this issue, we chose the approach adopted by the U.S. Second Circuit in U.S. v. Mastrangelo, supra.
Defendant argues that the trial court failed to address the issue of whether the state knew or should have known of the evidence sought to be introduced at the remand hearing and to make a determination of whether the state waived its right to address the waiver issue on remand. Defendant asserts that this was a threshold determination to be made by the trial court prior to ruling on whether the defendant waived his right to cross-examine Durbyn. Contrary to defendant's assertion, the trial court specifically found that the state neither knew nor should have known of the reason for Durbyn's refusal to testify. It necessarily follows that the state did not therefore, waive its right to address the waiver issue on remand. The trial court clearly complied with the order from this court. It addressed each issue in turn.
The trial court found the testimony of the prosecuting attorney and that of the district attorney's investigator to be credible. Credibility of witnesses is a matter in which the trial judge's discretion is broad, and it is a matter concerning which he is particularly well suited to judge. State v. Collins, 328 So.2d 674 (La.1976). It is not a function of a reviewing court on appeal of a criminal conviction to evaluate the credibility of witnesses.
The trial court found the following pertinent facts. The state first learned of defendant's incriminating statements to Durbyn in July, 1986, when Durbyn's attorney informed Mr. Mickel, the prosecuting attorney, that the statements had been made. A recorded statement was taken by Sergeant Via in the presence of Durbyn's attorney and Mr. Mickel on July 31, 1986. The state disclosed the contents of the statement to defense counsel on September 22, 1986. On October 9, 1986, Durbyn was called as a witness by defense counsel at the hearing on the "Motion for Preliminary Examination for the Perpetuation of Testimony and for the Fixing of Bail", where he repeated under oath the statements made by defendant. Durbyn was again called as a defense witness at the hearing on the motion to suppress the statements.
The trial court found that on June 5, 1986, defendant physically attacked Durbyn at the jail and threats were made during or after the fight. Mr. Mickel learned of the fight the same day through the investigating deputy and through his wife, an administrative deputy at the jail. He and the district attorney's investigator, William Dunn, interviewed Durbyn again about four or five days prior to the time trial was scheduled to begin. Durbyn told them about the fight but was still willing to testify. On the night of June 16, 1986, while Durbyn was being brought from the jail to testify, he told William Dunn that he was not going to testify but did not say why. After the trial was adjourned for the day Mr. Mickel interviewed Durbyn and was informed that Durbyn had decided not to testify. Durbyn would not give a reason other than "he didn't want to participate." After attempting to persuade Durbyn to testify, Mr. Mickel was left with the impression that Durbyn might or might not testify. When called as the first witness the next day, Durbyn refused to testify.
In December, 1988, after this court's original opinion was rendered, Mr. Mickel interviewed Durbyn about his decision not to testify. This was the first time that Mr. Mickel knew the reason for Durbyn's refusal. Durbyn repeated his statement to Mr. Mickel concerning his refusal to testify in a recorded statement on March 2, 1989. Durbyn stated that the refusal was based on the defendant's threats to kill Durbyn if he ever told anyone and that defendant had sent other people to tell Durbyn that defendant was going to get him. When asked why he refused to explain his refusal to testify, Durbyn stated that he did not want to admit he was afraid of another inmate. Durbyn was again called to testify at the hearing on remand; again he refused to testify.
*805 The trial court further noted that without knowledge of the reason for the refusal to testify the state had no indication it should go forward with evidence of the defendant's conduct. See U.S. v. Potamitis, 739 F.2d 784 (2d Cir.1984), cert. denied 469 U.S. 918, 934, 105 S.Ct. 297, 332, 83 L.Ed.2d 232, 269 (1984) for a similar situation where the government had been informed that a witness would testify on Saturday evening before his scheduled Monday appearance but the witness disappeared instead.
Further, the prior testimony of Durbyn was admitted at trial on an evidentiary basis other than defendant's waiver of the right to confrontation through misconduct and there was no apparent need for the state to assert additional grounds for admission of this testimony.
Considering that the state neither knew nor should have known that defendant's conduct was the reason for Durbyn not testifying at trial and that the former testimony was accepted on another basis at trial, the state, by failing to present evidence of the misconduct at trial, did not waive its right to later assert the defendant's misconduct.
Defendant also argues that the trial court should have applied the clear and convincing standard of proof in determining whether Durbyn's prior testimony was surrounded with sufficient indicia of trustworthiness. Our instructions to the trial court were to determine whether Durbyn's prior testimony was "surrounded with sufficient particularized guarantees of trustworthiness." U.S. v. Mastrangelo, supra. This the trial court did.
The trial court noted that Durbyn had already pled guilty when he first disclosed the information he received from defendant. Although he had not been sentenced there was no agreement with the state to recommend leniency. Durbyn testified under oath and subject to the penalties for perjury. He reaffirmed his testimony several times to his attorney and to the assistant district attorney. At no point did he recant his story. When called to testify at trial he affirmed that he had told the truth in the prior hearing.
These factors taken together provide sufficient indicia of reliability for admission of the prior testimony. Ohio v. Roberts, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). See also U.S. v. Mastrangelo, 533 F.Supp. 389 (E.D.N.Y.1982); U.S. v. Carlson, 547 F.2d 1346, 1354 (8th Cir.1976). We find no error of the trial court in this ruling.
Defendant asserts the trial court's factual findings are manifestly erroneous as they are not supported by legally admissible evidence. The evidence at the remand hearing included: testimony of various deputies from the jail; testimony of Mr. Dunn, the District Attorney's investigator in this case; testimony of the prosecuting attorney, Mr. Joseph Mickel; the offense report by the deputy after the July 15th incident at the jail; recorded statements by Alfred Durbyn; the transcript of Durbyn's sentencing for contempt; and, the record of the original proceeding. The trial court was instructed to consider all of the evidence relevant to the waiver issue by this court.
Defendant argues the trial court improperly considered statements made by Alfred Durbyn which denied defendant the opportunity to cross-examine Durbyn. He also complains that hearsay was admitted in statements made by Durbyn to others. In his per curiam, the trial court stated these items were relevant to the issues on remand. The state argues the statements were not hearsay as they were admitted to show Durbyn's state of mind and what was said rather than for the truth of the assertions themselves. The state argues also that under LSA-C.E. Art. 1101 B(8) the trial court was not bound by the strict rules of evidence as it would be at trial.
The trial court did not err in considering the hearsay statements for the purpose of demonstrating the state of mind of Alfred Durbyn. Further, we note that LSA-C.E. Art. 104 provides that the trial court is not bound by the rules of evidence in determining preliminary questions concerning the admissibility of evidence. Thus, the court could consider hearsay in *806 determining as a preliminary matter whether the witness was threatened, thereby making his former testimony admissible as evidence. This conforms to our instructions to the trial court to consider all relevant evidence.
Defendant also complains of the trial court's consideration of its findings of fact at the first sentencing of Alfred Durbyn for contempt which took place shortly after the trial. It is clear that the trial court may take judicial notice of prior proceedings which are part of the same proceeding he has previously tried. State v. Jones, 332 So.2d 461 (La.1976) and State v. Augillard, 371 So.2d 798 (La.1979). Although the contempt proceedings against Durbyn are not technically part of the case against Magouirk, the Durbyn contempt arose out of and was ancillary to the prosecution of Magouirk. The trial court was correct in admitting into evidence the transcript of the connected sentencing for contempt at which he also presided. The weight assigned to this evidence is within the trial court's discretion.
Defendant also argues that the trial court's finding of defendant's waiver by misconduct was clearly erroneous. We disagree.
Examination of all of the evidence available at the remand hearing reveals the following: (1) Magouirk had an obvious motive to attempt to prevent testimony by Alfred Durbyn as this testimony clearly implicated defendant in the murder of Kathy Thomas, (2) Magouirk's threat to Durbyn and statement to the deputies immediately after the scuffle at the jail indicate intent to prevent Durbyn from testifying, (3) Durbyn's statement to the trial court at his sentencing for contempt further indicates Magouirk intended to prevent Durbyn's testimony at trial by threats. See the opinion on the remand hearing in U.S. v. Mastrangelo, 561 F.Supp. 1114 (E.D.N. Y.1983), affirmed 722 F.2d 13 (2nd Cir. 1984), cert. den. 467 U.S. 1204, 104 S.Ct. 2385, 81 L.Ed.2d 343 (1984).
The trial court's finding that defendant waived his right to confront and cross-examine Alfred Durbyn by engaging in conduct designed to secure Durbyn's refusal to testify is supported by the record and is correct.
Accordingly, Durbyn's former testimony given at the preliminary examination was admissible at trial. Our holding to the contrary in our original opinion is withdrawn and set aside, as is the order reversing the conviction and ordering a new trial.

ASSIGNMENT OF ERROR NO. 1
The trial court erred in not having heard and having ruled on defendant's motion to quash based on prosecutorial misconduct before hearing the issues presented on remand.
The defendant filed a motion to quash the indictment in the trial court after the matter was remanded and prior to the evidentiary hearing held pursuant to the remand order. Defendant's motion to quash is based on alleged prosecutorial misconduct in connection with evidence used in the prosecution of this case and also in defendant's later trial for two related burglaries for which he was acquitted. Defendant argues the matter should have been heard and ruled on prior to the hearing on remand. We disagree.
Defendant was granted an appeal to this court. The remand to the trial court was for the limited purpose of conducting an evidentiary hearing and making determination on the waiver issue as directed. The trial court was without jurisdiction to hear other matters. LSA-C.Cr.P. Art. 916. It does not appear that defendant sought to set the motion to quash for hearing. There was no error in failing to hear and rule on the motion to quash.
Defendant asks this court to remand to the trial court for consideration of this motion. We decline to do so. Defendant's motion asserts prosecutorial misconduct in that "the state effectively procured Mrs. Frame's perjured testimony at the burglary trial." The burglary trial was a separate and distinct proceeding from the one at bar. Were defendant to prove every allegation in his motion to quash, he would *807 not be entitled to relief in this proceeding. Defendant does not ask for a new trial or allege grounds for a new trial for which a remand might be in order. See LSA-C. Cr.P. Art. 851. Therefore, we perceive no reason or legal basis for a remand. This assignment of error is without merit.

ORIGINAL ASSIGNMENT OF ERROR NO. 4
The state failed to sustain its burden of proving defendant's guilty of each and every essential element of the charged offense, or the lesser included offense, beyond a reasonable doubt, in a case consisting mainly of circumstantial evidence.
Defendant's Assignment of Error No. 4 on original appeal was not considered by this court as we remanded to consider whether the defendant had waived his right of confrontation so as to render Durbyn's testimony admissible. As we affirm the trial court's ruling in the evidentiary hearing on remand, it becomes necessary to consider defendant's remaining assignment of error.
By this assignment of error, defendant asserts the evidence is insufficient to support either a second degree murder conviction or a manslaughter conviction. In brief, the defendant asserts that this assignment of error is closely related to the admission of other crimes evidence addressed in our previous opinion. Defendant further argues the evidence was insufficient to support a verdict of manslaughter.
Under the standard of review enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the proper standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. The circumstantial evidence presented at trial was sufficient to support the defendant's conviction. Evidence was presented at trial to show that defendant had committed at least two other burglaries within days or hours prior to the burglary of Kathy Thomas's home. Both burglary victims, Rothwell and Cloyd, knew the defendant. Evidence showed the defendant was in the vicinity when these crimes took place. The same type of items, women's personal apparel, were taken in all of the burglaries.
Evidence showed the defendant knew Kathy Thomas from his girlfriend's place of employment. Rothwell also worked with the defendant's girlfriend. A witness placed defendant's truck or a truck similar to it within a short distance of Thomas's rural residence at the time Thomas was abducted. Impressions made by the same type of glove were taken from the front door of Thomas's trailer and from the window of defendant's truck.
Testimony from the victim's mother indicated that defendant was not dating her daughter, nor did the daughter even know defendant. Yet, a hair characteristically compatible with defendant's was found on Kathy Thomas's bed linens. Her bed was uncharacteristicly disheveled and her personal belongings, which she undoubtedly would have taken had she left voluntarily, were still by her bed side. The electric blanket was left on.
From defendant's truck, FBI agents took a hair, and compared it to the victim's. They determined that the hair had been forcibly removed and the characteristics of this hair were the same as that of the victim. Also seized were tires that defendant had removed from his truck within three days of Kathy Thomas's disappearance. The tires were hardly worn at all, yet all were replaced for no apparent reason with new tires of the same type. Plaster casts made at the location where a truck similar to defendant's was seen, were compared with the defendant's tires. FBI experts could not exclude the tires as having made the impressions.
A collection of women's underwear, swimsuits and workout suits was found near where the defendant was arrested, not far from his father's camp, a place that *808 defendant often frequented. Some items had been abandoned in the Ouachita River, and others were found in defendant's uncle's barn. The victim's mother identified several of the items of lingerie as belonging to her daughter. Rothwell and Cloyd also identified items recovered as being theirs.
An athletic shoe taken from defendant's home could not be excluded by the FBI as having made impressions found on the ground near the victim's body.
Finally, testimonial evidence was presented at trial as direct evidence of Magouirk's crime. Alfred Durbyn, defendant's cellmate, testified that Magouirk had told him he had taken the victim from her home, had oral sex with her, and then "wasted her."
Considering the evidence presented in its totality, every reasonable hypothesis of innocence was excluded. Viewing the evidence in the light most favorable to the prosecution, the circumstantial and direct evidence presented was sufficient for a rational juror to conclude that the essential elements of the crime for which the defendant was charged were proven. Finding the evidence sufficient to support the crime charged, the evidence will support conviction of the lesser "compromise" verdict. State, ex rel Elaire v. Blackburn, 424 So.2d 246 (La.1982), cert. denied 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983); State v. Holland, 544 So.2d 461 (La.App. 2d Cir.1989). This assignment of error is without merit.

CONCLUSION
Finding no merit to defendant's assignments of error, the ruling of the trial court at the evidentiary hearing on remand is affirmed and the defendant's conviction of manslaughter is affirmed.
AFFIRMED.