REVISED, January 24, 2001

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-30594

_____

KENNETH WAYNE MAGOUIRK,

Petitioner-Appellant,

v.

WARDEN, WINN CORRECTIONAL CENTER

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____

January 15, 2001

Before KING, Chief Judge, WIENER, and CUDAHY,* Circuit Judges.

CUDAHY, Circuit Judge:

On July 31, 1986, a Ouachita Parish, Louisiana grand jury indicted Petitioner Kenneth Magouirk for the first degree murder of Katherine Thomas. In October 1986, the government amended the indictment to charge Magouirk with second degree murder. At Magouirk's first trial, in 1987, the jury was also instructed on lesser included offenses. The jury found Magouirk guilty of

_____

* Circuit Judge of the United States Court of Appeals for the Seventh Circuit, sitting by designation.

manslaughter, and in September 1987 Magouirk was sentenced to serve 21 years at hard labor. In October 1995, he filed a petition for habeas relief under 28 U.S.C. § 2254 in the Western District of Louisiana, challenging his conviction. This petition was denied, and he appeals.

This case arises out of events that occurred on the evening of Good Friday, 1986. Katherine Thomas was abducted from her home, killed and thrown into the Ouachita River. See State v. Magouirk, 539 So.2d 50, 52-54 (La.Ct.App. 1989) (describing offense). Police received a tip that Magouirk had a fetish for women's underwear, and that he had some of Thomas' underwear in his possession. See id. at 53. Near the spot where Magouirk was arrested, police found a bag of women's clothing, which included items that belonged to Thomas. See id. at 54, 59-60.

About one year prior to trial, Magouirk confessed to his jail cellmate, Alfred Durbyn, that he was responsible for Thomas' murder. Durbyn reported the confession, and his lawyer arranged for him to make a recorded statement to the sheriff. Durbyn's statement related that Magouirk told Durbyn that he had taken Thomas from her home, forced her to perform oral sex, and then killed her. Durbyn's statement also asserted that Magouirk threatened to kill him if he revealed Magouirk's confession. Magouirk later moved to suppress this statement.

In October 1986, the trial court held a hearing on Magouirk's motion to perpetuate testimony. Magouirk called

2

Durbyn, who repeated the details of Magouirk's confession. Magouirk's counsel claimed surprise and requested permission to treat Durbyn as a hostile witness. The state argued that there was no surprise because the content of Durbyn's testimony had been disclosed in discovery. The court denied Magouirk's request to treat Durbyn as a hostile witness.

Magouirk's trial was scheduled to begin on June 15, 1987. In early June, Magouirk and Durbyn engaged in a brief altercation. As Durbyn was being transferred from the jail to testify, he informed the district attorney's investigator that he had decided not to testify. When he took the stand, he testified that his earlier statements at the hearing to perpetuate testimony were not true; he then asserted his Fifth Amendment rights and refused to testify further. The trial court informed him that the Fifth Amendment did not protect him in this situation, ordered him to testify, and ultimately held him in contempt.

The government then moved to have Durbyn declared "unavailable" so that his testimony at the perpetuation hearing could be introduced. Magouirk objected, arguing that he had no opportunity to cross-examine Durbyn in the earlier hearing, and that admission of the testimony would violate his Sixth Amendment right to confront and cross-examine witnesses. The court allowed Durbyn's prior recorded testimony to be played for the jury. Magouirk attempted to call Durbyn as a hostile witness later in

3

the trial, but the trial court refused.  Magouirk was convicted of manslaughter.

He appealed, and the Louisiana Court of Appeal for the Second Circuit found that the admission of Durbyn's prior testimony violated Magouirk's Confrontation Clause rights, and remanded the case for a new trial.  On a petition for rehearing, the state argued for the first time that Magouirk had waived his right to confrontation through his own misconduct.  The Court of Appeal remanded the case for a hearing on the issue whether the government knew or should have known of the facts that gave rise to Durbyn's refusal to testify, and, if not, whether Magouirk's alleged misconduct constituted a waiver.  The trial court found that Magouirk had waived his right to cross-examine the witness. The Court of Appeal then affirmed the conviction and sentence.

Years later, Magouirk filed a petition for a writ of habeas corpus, which was denied.  On June 18, 1998, we affirmed in part, vacated in part and remanded the habeas case on the issues: 1) whether the state waived its right to argue that Magouirk waived his Confrontation Clause rights; 2) whether Magouirk waived his Confrontation Clause rights; and 3) whether there was insufficient evidence to convict Magouirk of manslaughter. Magouirk v. Phillips, 144 F.3d 348 (5th Cir. 1998).  On remand, the district court again denied the petition on the basis of a magistrate judge's report and recommendation.  The magistrate

4

judge found that the state had not waived its right to claim that Magouirk waived his confrontation rights; that there was a preponderance of evidence that Magouirk waived his confrontation rights by intimidating Durbyn; and that there was sufficient evidence to convict.

Magouirk filed a notice of appeal and a motion requesting a certificate of appealability, and the district court denied the certificate of appealability. This court granted Magouirk a certificate of probable cause in November 1999.[1]

In this appeal, Magouirk raises three claims: 1) that the State waived its right to argue that Magouirk had forfeited his Confrontation Clause rights; 2) that the district court erred in finding that the state had proven that Magouirk waived his Confrontation Clause rights; and 3) that the district court erred in finding that there was sufficient evidence to support Magouirk's conviction.

Because Magouirk filed his petition prior to the enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the standards of review to be applied are those that existed prior to the enactment of the statute. Under pre-AEDPA law, 28 U.S.C. § 2254(d) required federal courts in habeas corpus

---

[1]A certificate of probable cause, rather than a certificate of appealability, was warranted in this case because that is what is required for § 2254 petitions filed before April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act. See Green v. Johnson, 116 F.3d 1115, 1119-20 (5th Cir. 1997).

5

proceedings to accord a presumption of correctness to state court findings of fact, while state court determinations of law were to be reviewed <u>de novo</u>.  See <u>Johnson v. Puckett</u>, 176 F.3d 809, 813 (5th Cir. 1999).

## I.

Magouirk first argues that the prosecution waived its right to argue that he forfeited his Confrontation Clause rights because the prosecution did not lay a proper foundation to show waiver at trial.  As we discuss below, in order to have Durbyn's testimony admitted at trial, the government had to show 1) that Durbyn was unavailable and 2) that his testimony bears adequate indicia of reliability.  Magouirk argues that the only reason the prosecution failed to do this at trial is that the prosecutor did not know that the right to confrontation could be waived by misconduct.  As we noted in deciding Magouirk's first appeal to this court, "[w]hether Magouirk waived his right to confront Durbyn is a federal question of constitutional dimension. Whether the state waived its right to raise Magouirk's waiver by failing to assert the argument at trial is a matter of state law."  <u>Magouirk v. Phillips</u>, 144 F.3d at 362 n.4.  Magouirk has identified no constitutional or federal authority to support his argument that the prosecution waived its right to claim that Magouirk waived confrontation in the habeas proceeding.  Thus, when the Louisiana Court of Appeal held that the prosecution had

6

not waived this right, that was the final word on the matter. The Louisiana Court of Appeal affirmed the trial court determination that the prosecution did not know of Magouirk's intimidation of Durbyn at the time of trial, and therefore did not waive its right to argue that Magouirk had waived his confrontation right. Thus, the court held that the state, "by failing to present evidence of [Magouirk's] misconduct at trial, did not waive its right to later assert the defendant's misconduct." State v. Magouirk, 561 So.2d 801, 805 (La. Ct. App. 1990). Because there was no showing that these events violated Magouirk's constitutional rights, this state court decision will stand.

## II.

It is clear to us that Magouirk's Confrontation Clause rights were violated. The Sixth Amendment to the United States Constitution provides in part that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Louisiana Court of Appeal unequivocally found that the opportunity to cross-examine Durbyn was thwarted: "The record reveals that every attempt by defense counsel to cross-examine Mr. Durbyn was thwarted by the prosecution's objections which were sustained by the trial court." State v. Magouirk, 539 So.2d 50, 57 (La. Ct. App. 1988). This finding is entitled to a presumption of correctness. See 28

7

U.S.C. § 2254(d).

Durbyn's testimony could have been admissible if it fell within a firmly rooted hearsay exception. This is because such statements "are so trustworthy that adversarial testing would add little to their reliability." Idaho v. Wright, 497 U.S. 805, 821 (1990). The only possible such exception here would be the prior testimony exception, Rule 804(b)(1). This exception is only applicable, however, if the defendant "had an opportunity ... to develop the testimony by direct, cross, or redirect examination." Fed. R. Evid. 804(b)(1). Thus, the determination that Durbyn was not effectively cross-examined at the preliminary hearing denies the availability of this exception. This court would have to find, contrary to the state court, that there had been an adequate opportunity to cross-examine Durbyn to hold that his testimony was admissible absent a waiver.

In cases in which the prior testimony of a now-unavailable witness has been deemed admissible, the defendant has usually had the opportunity to cross-examine the witness at the previous hearing. For example, in Ohio v. Roberts, the Supreme Court concluded that defense counsel had had the opportunity to conduct "the equivalent of significant cross-examination" at a preliminary examination. 448 U.S. 56, 70-71 (1980). And in Mechler v. Procunier, this court found the prior testimony of an unavailable witness to be admissible; the preliminary hearing cross-examination of the witness "was neither de minimis nor

8

ineffective." 754 F.2d 1294, 1297-98 (5th Cir. 1985). We expressly declined to decide whether ineffective or minimal examination of the witness would bar admission of that witness' testimony at trial, and we decline to do so here, because Magouirk was unable to conduct any cross-examination of Durbyn. Because we find that Magouirk's confrontation rights were thwarted because of a lack of a meaningful opportunity to cross-examine, Durbyn's statement would have been inadmissible absent a waiver.

Another issue impacts on whether a defendant's confrontation rights have been violated: whether the declarant's truthfulness is clear from surrounding circumstances or additional evidence. See Fed. R. Evid. 807 (residual exception to the hearsay rule). In Idaho v. Wright, the Supreme Court held:

> [I]f the declarant's truthfulness is so clear from the surrounding circumstances that the test of cross-examination would be of marginal utility, then the hearsay rule does not bar admission of the statement at trial.

497 U.S. 805, 820 (1990) (evaluating the propriety of admission of hearsay under the residual hearsay exception). In Mechler, this court was apparently swayed by the circumstances bolstering the trustworthiness of the prior testimony as well: the statement occurred under circumstances resembling a trial; the witness was under oath; and the proceedings were conducted in front of a judicial tribunal, which could provide a record of the hearing.

9

See Mechler, 754 F.2d at 1300. However, even if such circumstances would be sufficient to permit admissibility of prior testimony despite inadequate cross-examination, such circumstances are not present here. Or at least they are not present to an extent that would warrant admissibility absent some other justification.

It is apparent that Magouirk's Confrontation Clause rights were violated. However, Magouirk's claim fails because he waived his right to assert his rights under the Confrontation Clause.

## III.

A defendant's rights under the Confrontation Clause may be forfeited by his own misconduct. See Illinois v. Allen, 397 U.S. 337, 342-43 (1970). In United States v. Thevis, 665 F.2d 616 (5th Cir. 1982), we articulated the principle that actions of a defendant designed to procure a witness' unavailability constitute a waiver of confrontation rights, even if that witness was not effectively cross-examined at the preliminary hearing. Indeed, in Thevis, the witness was not cross-examined at all; the testimony that was properly admitted at trial was the grand jury testimony of a witness who had been murdered by the defendant. We deemed the testimony admissible, concluding that the defendant "intelligently and knowingly waived his confrontation rights," much in the same way a defendant who absents himself from trial or engages in conduct requiring his removal from the courtroom

10

knowingly waives those rights.  Id. at 630 (citing Taylor v. United States, 414 U.S. 17 (1980); Illinois v. Allen, 397 U.S. 337 (1970)).

The analysis that led us to find the Thevis testimony admissible extends to this case.  Even if Durbyn was not effectively cross-examined at the preliminary hearing, Magouirk's actions should not be rewarded.  Although in Thevis the defendant had the potential witness murdered, such a drastic approach to securing unavailability is a flagrant example of why the waiver principle must apply.  Here, the procurement of unavailability still constituted an intelligent and knowing waiver.  It is not so much the severity of the behavior, but rather the intent underlying it and its effectiveness, that constitutes a waiver.

The Eighth Circuit came to the same conclusion in United States v. Carlson, in which the court approved admission of the hearsay testimony because the defendant had intimidated the witness into not testifying—despite the fact that the defendant was unable to cross-examine the witness at any time.  547 F.2d 1346, 1359 & n.12 (8th Cir. 1976).  The court reasoned that to "permit the defendant to profit from [witness intimidation] would be contrary to public policy, common sense and the underlying purpose of the confrontation clause."  Id. at 1359.  The court recognized that this was an extension of the reasoning that allowed admission of a witness' prior testimony in Reynolds v. United States, 98 U.S. 145 (1878) (first articulating the

11

principle that a defendant should not profit from his misconduct in procuring a witness' unavailability).  In Reynolds, the defendant had the opportunity to cross-examine the witness when the prior testimony was recorded.  See id. at 159.

Other circuits have found that testimony in such circumstances is admissible, even if the witness was not cross-examined at all.  In United States v. Aguiar, the Second Circuit encountered a witness who declined to testify because of a threatening letter he had received from the defendant.  See 975 F.2d 45, 47 (2d Cir. 1992).  The court held that "where, after a hearing, a district court determines by a preponderance of the evidence that a defendant procured the absence of a witness, the defendant will be deemed to have 'waived his sixth amendment rights and, a fortiori, his hearsay objection.'" Id. (quoting United States v. Mastrangelo, 693 F.2d 269, 272 (2d Cir. 1982)).  The statements that were admitted were statements to the police, and not subject to cross-examination.  The Tenth Circuit has also found such a waiver in the form of threats by the defendant to the witness, subject—-as in Aguiar—-to an evidentiary hearing in which the court determines by a preponderance of the evidence that the defendant did procure the witness' unavailability.  See United States v. Balano, 618 F.2d 624, 629 (10th Cir. 1980).  The Balano case involved grand jury testimony of a witness who had not been cross-examined.

What this court is left to determine, then, is whether the

12

district court erred in finding that there is a preponderance of the evidence[2] that 1) Magouirk procured Durbyn's unavailability and 2) he did so for the purpose of preventing him from testifying.  See Thevis, 665 F.2d at 633 n.17.  We have no doubt that the evidence before the district court easily met this standard, and would even have met this circuit's "clear and convincing" standard.  The district court credited the assistant district attorney's testimony that Durbyn indicated a willingness to testify, and that, following an altercation with Magouirk, Durbyn told him he was no longer willing to testify.  The government also notes that in Durbyn's contempt proceeding, he testified that he did not want to place himself and his family in danger, and that Magouirk had both threatened and physically attacked him.  Magouirk does not dispute this.

**IV.**

The final basis for this appeal is Magouirk's argument that there was insufficient evidence to support his conviction.

_____

[2]This court has already held that a preponderance of the evidence standard applies to this finding, and that is the law of the case.  Magouirk v. Phillips, 144 F.3d 348, 360 (5th Cir. 1998) ("[T]he Louisiana state courts are not bound by Fifth Circuit precedent when making a determination of federal law.").  Thus, although this court has adopted a "clear and convincing evidence" standard for determining whether a defendant procured a witness' unavailability, see United States v. Thevis, 665 F.2d 616, 631 (5th Cir. 1982), the Louisiana Court of Appeal properly rejected that reasoning and adopted the Second Circuit's decision in United States v. Mastrangelo, 693 F.2d 269, 2773 (2d Cir. 1982), which permits a finding of waiver on proof by a preponderance of the evidence.

Magouirk's argument here is two-pronged: first, that there was insufficient evidence to support the conclusion that Thomas' death was a homicide, not an accident; and second, that Magouirk was the assailant. The first prong is without merit. The second is governed by whether Durbyn's testimony was admissible.

Magouirk's argument here is premised on a determination that Durbyn's testimony was inadmissible. He makes no argument that, with Durbyn's testimony, there was insufficient evidence to convict. Because we find that Durbyn's recorded testimony was admissible, there is no need for us to address this issue in the form presented by Magouirk.[3]

Because Magouirk does not raise a sufficiency of the evidence claim that encompasses all the evidence—-including Durbyn's testimony—-we need not address whether the other

---

[3]Even if we had found that Durbyn's testimony was erroneously admitted at trial, we would still not have to decide whether there was sufficient evidence to convict. We would simply reverse and remand for retrial. This court has held that the Double Jeopardy Clause does not prohibit retrial of a defendant following reversal of his conviction for error in the admission of evidence even if the evidence, sans the inadmissible evidence, was insufficient to sustain the defendant's conviction. See United States v. Sarmiento-Perez, 667 F.2d 1239, 1240 (5th Cir. 1982) (remanding "[b]ecause we cannot know what evidence might have been offered if the evidence improperly admitted had been originally excluded by the trial judge"); see also Lockhart v. Nelson, 488 U.S. 33, 40 (1988) (holding that the Double Jeopardy Clause allows retrial when a reviewing court determines that a conviction must be reversed because evidence was erroneously admitted against him, and also concludes that without the inadmissible evidence there was insufficient evidence to support a conviction); United States v. Marshall, 762 F.2d 419 (5th Cir. 1985) (same).

14

evidence alone was sufficient to support a conviction.

For the foregoing reasons, we AFFIRM the decision of the district court.