**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Richard MASTRANGELO,**
**Defendant-Appellant.**

**No. 140, Docket 82–1148.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 28, 1982.

Decided Nov. 15, 1982.

---

See also, D.C., 533 F.Supp. 389.

Gerald L. Shargel, New York City (Judd Burstein, New York City, of counsel), for appellant Mastrangelo.

William J. Muller, Asst. U.S. Atty., E.D. N.Y., Brooklyn, N.Y. (Edward R. Korman, U.S. Atty., E.D.N.Y., Mary McGowan Davis, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee United States.

Before FEINBERG, Chief Judge, and OAKES and WINTER, Circuit Judges.

RALPH K. WINTER, Circuit Judge:

Richard Mastrangelo appeals from a judgment of conviction entered in the United States District Court for the Eastern District of New York, after a jury trial before Judge McLaughlin. Mastrangelo was found guilty of conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. § 846 (1976), possession with intent to distribute marijuana and methaqualone tablets, in violation of 21 U.S.C. § 841(a)(1) (1976), importation of marijuana and methaqualone, in violation of 21 U.S.C. §§ 952(a) and 960 (1976), and obstruction of justice, in violation of 18 U.S.C. § 1503 (1976). Appellant asserts as error the use of the grand jury testimony of a witness who was murdered during the course of his first trial. The decision of the District Court regarding admission of the grand jury testimony is reported at 533 F.Supp. 389 (E.D.N.Y.1982). Mastrangelo claims that such testimony is inadmissible hearsay, the use of which also violates the

confrontation clause, U.S. Const. amend. VI.

We remand for an evidentiary hearing as to whether Mastrangelo was involved in the murder of that witness and thereby waived his objection to use of the grand jury testimony.

## BACKGROUND

While we assume familiarity with our previous opinion, *United States v. Mastrangelo,* 662 F.2d 946 (2d Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2236, 72 L.Ed.2d 847 (1982), we briefly set out the facts before us. The government originally charged Mastrangelo and eleven co-defendants with a series of crimes stemming from the importation of 23.4 tons of marijuana and 499,000 methaqualone·tablets during 1978. The sole link between Mastrangelo and the drug conspiracy is evidence of his purchase of four trucks which were seized by federal narcotics agents while loaded with the drugs. The sole witness to the purchase of the trucks was one James Bennett. On April 2, 1979, Bennett testified before a grand jury that he sold Mastrangelo the trucks under suspicious circumstances and further identified a tape recording of a February 1, 1979, conversation with Mastrangelo which he, Bennett, made in cooperation with federal agents. During that conversation, Mastrangelo made statements to Bennett which, viewed in print, might reasonably be interpreted as threats intended to deter Bennett from identifying Mastrangelo as the purchaser of the trucks.[1]

Mastrangelo and a co-defendant Joseph Dazzo were severed from the January, 1981, trial of the ten other defendants due to the unavailability of their counsel. The trial of Mastrangelo and Dazzo began on April 27, 1981. On April 29, on his way to the courthouse to testify, Bennett stepped out of his daughter's Brooklyn home, was chased by two men and was shot dead in the street. The trial judge, Chief Judge Weinstein, declared a mistrial as to Mastrangelo and subsequently denied his motion to bar reprosecution on the basis of the double jeopardy clause, stating,

I was under the distinct impression, and I believe that by a preponderance of the evidence, based on what I then had before me, I was warranted in finding that this defendant Mastrangelo, either directly arranged for the killing of the witness or was advised of the possible killing of the witness and acquiesced. He was the only person that could gain from it. . . .

The tape was clear that he had threatened another witness. Mastrangelo was out on bail. The Court observed him during this emergency. Everybody in the courtroom was shocked. Mr. Coiro was very upset. The defendant, Mastrangelo, took it like a soldier. He didn't smile, as I recall, but he certainly wasn't upset by it. At best, he was neutral on the issue.

It just is inconceivable . . . that this radical step to aid Mastrangelo, who is the only person that could have been helped by killing this witness, would have been taken without his knowledge, acquiescence, or orders. And that, it seems to me, is the clearest situation of a finding of manifest necessity that you can get. 662 F.2d at 950–51. This Court affirmed the trial court's decision on October 28,

---

1. When Bennett protested, "I can't lie to a Grand Jury," the following exchange ensued:

M. No, but you can . . . In other words, uh, if they ask, in other words, ah, if they say anything with me, you can't say me. Do you understand?
B: Well, I say, ah, I say I sold you the trucks, right?
M: You can't.
B: Why can't I?
M: You can't say that. Because you didn't sell me the trucks.
B: Well, I actually sold you the trucks.

M: You didn't. You know, Jim? You know what I mean, you really didn't? Otherwise they show you a picture of anybody. Say, say this person did really buy it. They show you pictures. That's not him.
B: Yeah.
M: You know what I mean Jim it's for your own good 'cause 'cause then ah, in other words they're going fuck everything around. I'll get back to you as far as anything . . . You didn't say nothing as far as to ah reference to me yet . . . did you?
B: No.

272

1981, allowing that there was a distinct possibility that Mastrangelo had participated in Bennett's death and that, given the problems inherent in a delay for a full hearing on the issue of Mastrangelo's complicity, no greater standard of proof was required for purposes of a mistrial. 662 F.2d at 951–52. Mastrangelo's second trial began on February 22, 1982. Prior to trial, the Government moved for the admission of Bennett's grand jury testimony under Fed. R.Evid. 804(b)(5) the residual exception to the hearsay rule.[2] Mastrangelo opposed the motion on the grounds that Rule 804(b)(5) does not permit use of such testimony and that its admission is in any event prohibited by the confrontation clause, citing *United States v. Fiore,* 443 F.2d 112 (2d Cir.1971), *cert. denied,* 410 U.S. 984, 93 S.Ct. 1510, 36 L.Ed.2d 181 (1973). Judge McLaughlin held the testimony admissible because it was surrounded with sufficient " 'particularized guarantees of trustworthiness'," 533 F.Supp. at 390, to overcome the confrontation clause objections, noting as well that, "although this is not dispositive, there is a finding by the prior trial judge that the defendant was implicated in the murder of Bennett, a finding characterized by the Second Circuit as 'understandable'." *Id.*

■ We hold that although Judge Weinstein's finding is not dispositive in the present proceeding, it raises an issue as to whether Mastrangelo waived his sixth amendment rights and, *a fortiori,* his hear-

say objection. If Mastrangelo was involved in Bennett's death, his involvement waived his confrontation clause objections to the admission of Bennett's testimony. Because a waiver, if factually supported, will allow us to avoid resolution of the difficult legal and constitutional issues arising under the confrontation clause and Rule 804(b)(5) [3], we remand the case to the District Court for an evidentiary hearing on the question of Mastrangelo's involvement in the murder of Bennett.

■ The Supreme Court has recognized on several occasions that the right of confrontation may be waived not only by consent, but "at times even by misconduct." *Snyder v. Massachusetts,* 291 U.S. 97, 106, 54 S.Ct. 330, 332–333, 78 L.Ed. 674 (1934); *Diaz v. United States,* 223 U.S. 442, 452–53, 32 S.Ct. 250, 252–253, 56 L.Ed. 500 (1912); *cf. Illinois v. Allen,* 397 U.S. 337, 342–43, 90 S.Ct. 1057, 1060–1061, 25 L.Ed.2d 353 (1970) (disruptive conduct in courtroom); *Reynolds v. United States,* 98 U.S. 145, 159, 25 L.Ed. 244 (1878) (defendant's conduct rendered witness unavailable for trial). As the Court stated in *Diaz,* 223 U.S. at 458, 32 S.Ct. at 255 (quoting with approval *Falk v. United States,* 15 App.D.C. 446, 460, *cert. denied,* 181 U.S. 618, 21 S.Ct. 923, 45 L.Ed. 1030 (1901)), "Neither in criminal nor in civil cases will the law allow a person to take advantage of his own wrong." Thus, if a witness' silence is procured by the de-

2. Fed.R.Evid. 804(b)(5) states:

A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it,

including the name and address of the declarant.

3. Mastrangelo testified in his own defense and conceded the truth of much of Bennett's grand jury testimony. The government argues as a consequence that he has waived his objections. We have previously held, however, that a "defendant's case is prejudiced if he must adjust his defense to refuting testimony improperly admitted. The government cannot use the defendant's rebuttal testimony as grounds for claiming independent vitality for its inadmissible evidence." *United States v. Rosse,* 418 F.2d 38, 42 (2d Cir.1969), *cert. denied,* 397 U.S. 998, 90 S.Ct. 1143, 25 L.Ed.2d 408 (1970). Since the entire course of the trial was affected by the admission of Bennett's testimony in the government's main case, Mastrangelo's decision to testify cannot be a basis for a waiver.

fendant himself, whether by chicanery, *United States v. Mayes,* 512 F.2d 637, 648–51 (6th Cir.), *cert. denied,* 422 U.S. 1008, 95 S.Ct. 2629, 45 L.Ed.2d 670 (1975), by threats, *United States v. Balano,* 618 F.2d 624, 628–29 (10th Cir.1979), *cert. denied,* 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980); *United States v. Carlson,* 547 F.2d 1346 (8th Cir.1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977), or by actual violence or murder, *United States v. Thevis,* 665 F.2d 616, 630–31 (5th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 57, 74 L.Ed.2d 61 (1982), the defendant cannot then assert his confrontation clause rights in order to prevent prior grand jury testimony of that witness from being admitted against him. Any other result would mock the very system of justice the confrontation clause was designed to protect.

▮ We agree with Mastrangelo, however, that an evidentiary hearing in the absence of the jury is necessary before a finding of waiver may be made. *Thevis, supra; Balano,* 618 F.2d at 629. Chief Judge Weinstein's finding was made without such a hearing and, while Mastrangelo did not request a hearing in that proceeding, he did ask for one on the waiver issue before Judge McLaughlin and thus preserved his rights. Since Mastrangelo's possible waiver of his sixth amendment rights is a preliminary question going to the admissibility of evidence, the hearing will be governed by Fed.R.Evid. 104(a), which states that the exclusionary rules, excepting privileges, do not apply to such proceedings. Thus, hearsay evidence, including Bennett's grand jury testimony, will be admissible, as will all other relevant evidence.

▮ The issue of the burden of proof in the waiver hearing is more difficult. While it is clear that the government bears the burden, the weight of that burden is in doubt. Other courts have divided on the issue; while *Balano* held that waiver might be shown by a preponderance of the evidence, *Thevis* applied the more stringent "clear and convincing" test. Moreover, the Supreme Court precedents are mixed. While the Court has held the preponderance

of evidence test applicable to suppression hearings involving possible misconduct by the government, *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626–627, 30 L.Ed.2d 618 (1972) (voluntariness of confession); *United States v. Matlock,* 415 U.S. 164, 177–78, 94 S.Ct. 988, 996–997, 39 L.Ed.2d 242 (1974) (consent to search), it has applied the clear and convincing standard to questions of admissibility involving constitutional requirements going to the reliability of evidence, *United States v. Wade,* 388 U.S. 218, 240, 87 S.Ct. 1926, 1939, 18 L.Ed.2d 1149 (1967) (circumstances surrounding identification at a showup).

These decisions are thus not dispositive. Since the right of confrontation is closely related to the reliability of testimonial evidence, the clear and convincing test may well apply to issues of admissibility arising under it. However, waiver by misconduct is an issue distinct from the underlying right of confrontation and not necessarily governed by the same rules concerning burden of proof. We see no reason to impose upon the government more than the usual burden of proof by a preponderance of the evidence where waiver by misconduct is concerned. Such a claim of waiver is not one which is either unusually subject to deception or disfavored by the law. *Compare* McCormick, *McCormick's Handbook on the Law of Evidence* § 340 (2d ed. 1972). To the contrary, such misconduct is invariably accompanied by tangible evidence such as the disappearance of the defendant, disruption in the courtroom or the murder of a key witness, and there is hardly any reason to apply a burden of proof which might encourage behavior which strikes at the heart of the system of justice itself.

▮ We therefore remand this case to the District Court for a hearing on the issue of Mastrangelo's participation in Bennett's murder. If the District Court finds that Mastrangelo was in fact involved in the death of Bennett through knowledge, complicity, planning or in any other way, it must hold his objections to the use of Bennett's testimony waived. Bare knowledge of a plot to kill Bennett and a failure to

give warning to appropriate authorities is sufficient to constitute a waiver. Although we hold that the standard of proof should be a preponderance of the evidence, we suggest, in order to expedite any further proceedings, that the trial judge make findings under the clear and convincing standard as well. This panel will retain jurisdiction of any further appeal in this case.

Remanded for further proceedings consistent with this opinion.

OAKES, Circuit Judge (concurring):

While I agree with most of the majority's opinion as well as its disposition of the case before us, because I remain in doubt as to the appropriate burden of proof in respect to waiver in this case, in prudence I will await the findings of the court below on remand.