UNITED STATES of America, Appellee,

v.

Andres AGUIAR, Defendant–Appellant.

No. 1917, Docket 92–1168.

United States Court of Appeals,
Second Circuit.

Argued Aug. 12, 1992.

Decided Sept. 10, 1992.

Jeremy Gutman, New York City, for defendant-appellant.

Susan Corkery, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty., E.D.N.Y., Emily Berger, and A. Ross Pearlson, Asst. U.S. Attys., of counsel), for appellee.

Before: WINTER, MINER and McLAUGHLIN, Circuit Judges.

WINTER, Circuit Judge:

Andres Aguiar appeals from his convictions after a jury trial in the Eastern District of New York before Judge Johnson for conspiring to import heroin into the United States in violation of 21 U.S.C. § 963 (1988), importing heroin into the United States in violation of 21 U.S.C. §§ 952(a) and 960 (1988), and possessing with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) (1988). Aguiar also appeals from a conviction for witness-tampering in violation of 18 U.S.C. § 1512(b)(1) (1988). We affirm.

On June 25, 1991, George Albino was arrested at John F. Kennedy Airport when heroin was found in his luggage. Albino agreed to cooperate and told authorities that he was to deliver the narcotics to a "Henry" in the public area of the International Arrivals Building. (A subsequent check revealed that Aguiar was also known as Henry Delgado.) Equipped with a concealed tape recorder, Albino approached Aguiar. Aguiar asked in Spanish if everything was okay and where the bag was. Albino responded affirmatively, and Aguiar then picked up the suitcase containing the heroin and was shortly arrested.

Albino subsequently entered into a plea agreement. He was interviewed pursuant to this agreement by Joint Narcotics Smuggling Unit Special Agent Peter Amentas and Assistant United States Attorney Andrew Weissmann. Albino stated that Aguiar had hired him to go to Brussels to obtain the heroin. Aguiar had made Albino's travel arrangements, obtained his

passport, paid his expenses, and agreed to pay him five to six thousand dollars upon delivery of the heroin. Albino also stated that, after the arrest, Aguiar told him to deny everything and to say that Aguiar was just a taxi driver.

On October 3, 1991, however, Albino told the government that he no longer wanted to cooperate. The following day he changed his mind again and explained that he had received written and verbal threats from Aguiar. He also expressed concern about his family's welfare. Albino gave Amentas one of the letters he had received from Aguiar. That letter threatened to expose criminal conduct by Albino, including murder. It urged Albino to "act quick and contact [his] lawyer to clear" Aguiar.

On October 7, Albino again refused to cooperate and withdrew from his plea agreement. On October 11, pursuant to a search warrant, agents found two threatening letters in Albino's cell. The first letter was from "a very good friend of Andy" who wrote that Albino would be convicted of murder and that other prisoners would be told that Albino was an informer. The second letter, which was unsigned but contained Aguiar's fingerprints and is thus attributable to him, stated that if Albino cleared Aguiar, Albino would not have to worry about the evidence of his state crimes. The letter also advised Albino to falsify his testimony, or so the jury could easily have found. Albino, even though he was granted immunity and faced civil and criminal contempt charges, refused to testify for the government or in Aguiar's defense.

At trial, the government sought to introduce Albino's prior statements to Amentas and Weissmann. Pursuant to *United States v. Mastrangelo*, 693 F.2d 269 (2d Cir.1982), the court held a hearing to determine whether Aguiar procured the unavailability of Albino. The government produced evidence of the events detailed above. Aguiar introduced a letter in Albino's handwriting, supposedly delivered to Aguiar in August but not given to Aguiar's attorney until the beginning of trial on November 12, 1991, in which Albino stated that he had falsely incriminated Aguiar. The district court held that Aguiar had procured Albino's unavailability and thereby waived his confrontation rights and hearsay objections. The court then admitted Albino's hearsay statements to Amentas and Weissmann as evidence.

Aguiar claims that his due process rights were violated by the introduction of Albino's hearsay statements. We disagree. In *Mastrangelo*, we held that where, after a hearing, a district court determines by a preponderance of the evidence that a defendant procured the absence of a witness, the defendant will be deemed to have "waived his sixth amendment rights and, *a fortiori*, his hearsay objection." *Id.* at 272. Aguiar argues that *Mastrangelo* involved grand jury testimony and does not apply to unsworn statements such as those at issue in the instant case. He further argues that the waiver of his Sixth Amendment confrontation rights does not obviate the need for a further inquiry into the reliability and trustworthiness of the witness's prior statements on due process grounds.

Although *Mastrangelo* involved sworn grand jury testimony, we did not there, and do not here, limit its rationale to such testimony. A defendant who procures a witness's absence waives the right of confrontation for all purposes with regard to that witness, not just to the admission of sworn hearsay statements. We may assume that the admission of facially unreliable hearsay would raise a due process issue, although it is hard to imagine circumstances in which such evidence would survive Fed.R.Evid. 403's test of weighing probative value against prejudicial effect, an objection that is not waived by procuring a witness's absence. In any event, there was no error of constitutional or non-constitutional dimension here. First, the district court gave appropriate limiting instructions concerning the hearsay statements. Second, the statements were amply corroborated by the events at the airport, which demonstrated that Albino was bringing the luggage containing heroin into the country for Aguiar, and by

Aguiar's letter telling Albino how to testify, a tale that did not purport to be the truth.

Aguiar next argues that the "lawful conduct" affirmative defense of Section 1512(d) of Title 18 is unconstitutional because it impermissibly shifts the burden of proof. He further argues that Judge Johnson's jury instructions gave insufficient guidance to the jury on the burden of proof. We reject these arguments for the reasons stated in *United States v. Johnson*, 968 F.2d 208, 213–215 (2d Cir.1992).

 Aguiar argues that *Johnson* is based on the particular charge given in that case and did not uphold the constitutionality of the statute. However, *Johnson* is not limited to its particular facts. *Johnson* thus specifically stated that "we see no constitutional defect *either* in the statute or in Judge Leval's charge." *Id.* at 215 (emphasis added). Moreover, the charge in the instant matter gave sufficient guidance to the jury. Judge Johnson charged that "[i]f you find that [Aguiar] only engage[ed] in lawful conduct and that his sole intention was to encourage, induce or cause George Albino to testify truthfully, then you must find him not guilty of Count Four." Given the simplicity and clarity of this instruction, an added instruction that it is not unlawful to advise another how to testify in the most favorable light would have had a potentially confusing effect in light of the fact that Aguiar's advice did not purport to seek truthful testimony.

Judge Johnson also gave a lengthy instruction on the burden of proof, emphasizing that the burden shifted only with regard to the affirmative defense and that Aguiar had to prove the affirmative defense only by a preponderance of the evidence. Although Aguiar argues that the judge should have granted his request to include in the charge that the act of writing a letter was lawful conduct, we agree with Judge Johnson not only that it is self-evident that the actual writing of a letter by itself is lawful, but also that it is up to the jury to determine the lawfulness of the content of such a letter. Judge Johnson's charge gave adequate guidance as to what

constituted such lawful conduct and did not require Aguiar "to prove that his conduct violated *none* of the panoply of state and federal laws that might apply to his situation." *Id.* at 212.

We therefore affirm.