Kevin R. DEVONSHIRE, Appellant,

v.

UNITED STATES, Appellee.

Ronnie T. VINES, Appellant,

v.

UNITED STATES, Appellee.

Nos. 94–CF–1624, 94–CO–1662, 95–CF–7.

District of Columbia Court of Appeals.

Argued Oct. 16, 1996.

Decided March 27, 1997.

M. Elizabeth Kent, Washington, DC, appointed by the court, for appellant Devonshire.

Joseph Virgilio, appointed by the court, for appellant Vines.

Steven E. Rindner, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher, Elizabeth Trosman, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and STEADMAN and KING, Associate Judges.

KING, Associate Judge:

Today we hold, consistent with every state and federal court that has considered the issue, that a defendant who kills a potential witness, who is expected to give damaging testimony against the killer in some future proceeding, waives the right under the Confrontation Clause of the Sixth Amendment to object to the admission of that witness's out-of-court statements. We also hold that, under such circumstances, a defendant waives the right to object on hearsay grounds to those statements. *See, e.g., United States v. Houlihan,* 92 F.3d 1271 (1st Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 963, 136 L.Ed.2d 849 (1997).

On April 6, 1993, Barbara Harmon was an eyewitness to the beating, robbery and shooting of her boyfriend, Ricardo Rollins, by a group of four men, including appellant Kevin Devonshire, who fired the shot that wounded Rollins. After the shooting, the assailants were later joined by appellant Ronnie Vines. Devonshire told the group that he was "going to kill that bitch" (Ms. Harmon) because she was going to call the police. Three days later Devonshire and Vines encountered Ms. Harmon in front of her home, and one of them shot her. She then fled down an alley, followed by either Devonshire or Vines, with the other acting as a lookout. Four more shots were fired, followed by Devonshire's and Vines's departure from the scene. Ms. Harmon died as a result of two contact bullet wounds to her head and left cheek.

Devonshire and Vines were jointly tried, with Devonshire being charged in four counts relating to the assault of Mr. Rollins, and both Devonshire and Vines being charged in multiple counts relating to the killing of Ms. Harmon, including first degree premeditated murder and first degree felony murder. Devonshire offered no defense to the charges; however, he did testify, admitting his own involvement in the murder of Ms. Harmon and in the shooting of Mr. Rollins, but denying that Vines was involved in any way. The jury found both Devonshire and Vines guilty on all counts.

The only issue meriting more than summary consideration is the contention by Devonshire that the trial court erred in rejecting his claim that the out-of-court statements of Ms. Harmon were inadmissible because he was denied his Sixth Amendment Confrontation Clause rights and because the statements were hearsay.[1] We affirm in all

---

1. None of the other issues raised have merit. (1) Vines moved for a new trial, supporting his motion with an affidavit from an asserted newly discovered witness. He contends that the trial judge erred in both denying the motion and in doing so without conducting an evidentiary hearing. Because the judge assumed the facts contained in the affidavit were true, no hearing was necessary, *see Poteat v. United States,* 363 A.2d 295, 296–97 (D.C.1976); the new evidence was

respects except for Devonshire's conviction for felony murder, which we remand to the trial court to be vacated.[2] *See Byrd v. United States,* 510 A.2d 1035 (D.C.1986) (en banc) (convictions for premeditated murder and felony murder of same victim merge); *see also Cowan v. United States,* 629 A.2d 496, 505 (D.C.1993); *Thacker v. United States,* 599 A.2d 52, 63 (D.C.1991).

## I.

After Mr. Rollins was shot, Ms. Harmon gave a statement about the incident to Detective Condra, which included detailed descriptions of the assailants, including Devonshire. Later that same evening, Ms. Harmon was present when police stopped a car which contained one of the other assailants and Mr. Vines. Ms. Harmon pointed at the other assailant, yelling "That's him. That's him. That's the one." From this incident, Vines learned that Ms. Harmon was cooperating with the police.

The government moved pretrial for the admission of Ms. Harmon's out-of-court, unsworn statements which, among other things, implicated Devonshire in the assault of Rollins and identified another of the assailants in the presence of Vines. Appellants opposed the motion, contending that the statements were inadmissible hearsay, arguing that the

evidence could not be admitted without violating their rights under the Confrontation Clause because the witness was unavailable.[3] The government responded that appellants waived their Confrontation Clause rights by killing Ms. Harmon. The government proffered the evidence it expected to present at trial to show that appellants were responsible for the unavailability of Ms. Harmon. Prior thereto, the trial court had heard evidence in connection with several pretrial motions during which there was evidence that Rollins identified Devonshire as the person who shot him and as one of the participants in the shooting death of Ms. Harmon. In addition there was testimony that another witness identified Devonshire as a participant in Harmon's shooting and that Devonshire stated while in the transport vehicle on the night of the murder, "Am I going to take the whole beef by myself?" After hearing from government counsel the specific nature of the statements made by Ms. Harmon, the trial judge stated he had no question the evidence was admissible "because it provides the background and the motive and the premeditation and deliberation and everything else you need for the murder in the first degree charge." The trial judge found, applying a preponderance of the evidence standard, that appellants had procured the unavailability of the witness, and, relying on cases from other

cumulative and would not have produced a different result at trial, *see Byers v. United States,* 649 A.2d 279, 288 (D.C.1994). Therefore there was no abuse of discretion.

(2) We reject both appellants' contentions that the trial court abused its discretion by not granting a mistrial or not conducting, *sua sponte* and over defense objections, a voir dire of each juror to determine whether any members of the jury were tainted by certain comments and actions of an excused juror. We cannot assume taint; the means for establishing jury bias, if there was any, was by an individual voir dire of the remaining jurors, a course which both Devonshire and Vines specifically and emphatically waived. *See Artisst v. United States,* 554 A.2d 327, 331 (D.C. 1989) (appropriate to reopen voir dire to determine whether any of the jurors was actually biased).

2. Devonshire argues that the sentencing procedures did not meet the statutory requirements for a sentence of life without parole on the felony murder conviction, and that his convictions for felony murder and premeditated murder must

merge. D.C.Code § 22–2404.1 (1995 Repl.) requires the trial court to "state in writing whether, beyond a reasonable doubt, 1 or more of the aggravating circumstances exist." D.C.Code § 22–2404.1(c) (1995 Repl.). *See Henderson v. United States,* 678 A.2d 20 (D.C.1996). In its sentencing order the trial court expressly found, beyond a reasonable doubt, that Devonshire killed Ms. Harmon because she was a witness and was capable of providing assistance in a criminal investigation or judicial proceeding, an aggravating fact specified in the statute. *See* D.C.Code § 22–2404.1(b)(9) (1995 Repl.). Devonshire argues that the finding of a single aggravating circumstance cannot support life without parole sentences for two separate convictions. We do not decide that issue because as appellant correctly contends, and the government does not disagree, the two murder convictions cannot stand. Because, on remand, the felony murder conviction will be vacated, no written finding, in support of a life without parole sentence for that charge, was required.

3. Only Devonshire raises this issue before this court.

jurisdictions cited below, ruled that Ms. Harmon's statements could be admitted at the trial.

## II.

### A. Waiver of Confrontation Clause and Hearsay Objection Rights

■ We have never decided this issue but we agree with the overwhelming weight of authority that appellant's Confrontation Clause rights must fall in these circumstances. As the trial judge correctly observed, a defendant's rights under the Confrontation Clause are not absolute. A defendant may waive his right to confrontation by express waiver, *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969) (waiver by guilty plea), or through his own intentional misconduct. *Snyder v. Massachusetts,* 291 U.S. 97, 106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934) (privilege lost by misconduct of defendant); *Taylor v. United States,* 414 U.S. 17, 20, 94 S.Ct. 194, 196, 38 L.Ed.2d 174 (1973) (per curiam) (waiver by boycotting own trial); *Illinois v. Allen,* 397 U.S. 337, 343, 90 S.Ct. 1057, 1060–61, 25 L.Ed.2d 353 (1970) (defendant's disruptive behavior requiring removal from courtroom waived his right to confrontation).

■ Nor is a defendant protected when he "does away with witnesses against him." All federal and state courts that have ad-

dressed this issue, that we could find, have concluded that when a defendant procures a witness's unavailability for trial with the purpose of preventing the witness from testifying, the defendant waives his rights under the Confrontation Clause to object to the admission of the absent witness's hearsay statements. *See Reynolds v. United States,* 98 U.S. 145, 25 L.Ed. 244 (1878) (where the absent witness had given sworn testimony in a previous trial of the same case, the defendant who procured the witness's unavailability for trial waived his confrontation rights); *Houlihan, supra,* 92 F.3d 1271 (defendant waives his Confrontation Clause rights by murdering a potential witness).[4] We agree with the reasoning of the Fifth Circuit:

> [W]hen confrontation becomes impossible due to the actions of the very person who would assert the right, logic dictates that the right has been waived. The law simply cannot countenance a defendant deriving benefits from murdering the chief witness against him. To permit such a subversion of a criminal prosecution "would be contrary to public policy, common sense, and the underlying purpose of the confrontation clause," ... and make a mockery of the system of justice that the right was designed to protect.

*Thevis, supra,* 665 F.2d at 630 (citation omitted).[5] Accordingly, we hold that because, as discussed below, it was sufficiently estab-

---

4. *See also United States v. Aguiar,* 975 F.2d 45, 47 (2d Cir.1992) (defendant waived right to confrontation and waived hearsay objections by threatening the witness); *United States v. Mastrangelo,* 693 F.2d 269 (2d Cir.1982) (murdered witness); *United States v. Thevis,* 665 F.2d 616 (5th Cir.1982) (actual violence or murder); *United States v. Carlson,* 547 F.2d 1346, 1358 (8th Cir.1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2174, 53 L.Ed.2d 224 (1977) (threats); *United States v. Balano,* 618 F.2d 624, 628–29 (10th Cir.1979), *cert. denied,* 449 U.S. 840, 101 S.Ct. 118, 66 L.Ed.2d 47 (1980) (waiver of right to confrontation and hearsay objections by threats to witness); *United States v. Rouco,* 765 F.2d 983 (11th Cir.1985), *cert. denied,* 475 U.S. 1124, 106 S.Ct. 1646, 90 L.Ed.2d 190 (1986) (murder); *State v. Gettings,* 244 Kan. 236, 769 P.2d 25 (1989) (by killing the witness, defendant waived confrontation right and hearsay objections); *People v. Geraci,* 85 N.Y.2d 359, 625 N.Y.S.2d 469, 649 N.E.2d 817 (1995) (defendant may not assert a right of confrontation or hearsay objections

where he has procured unavailability of the witness by violence, threats or chicanery). In another context we have spoken approvingly of this general principle. *Thomas v. United States,* 530 A.2d 217, 223 n. 7 (D.C.1987) ("if ... a witness' 'unavailability' has resulted from obstruction of justice ... it may well be concluded ... that the defendant has thereby waived his constitutional right to confrontation of that witness"), *vacated on other grounds,* 557 A.2d 599 (D.C.1989) (en banc).

5. In *Thevis,* the court also found a waiver under the standard set forth in *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938) (waiver of constitutional right ordinarily valid only with knowing and intentional relinquishment). The court reasoned that a defendant who acts to cause the witness's absence knows that the witness will not be available for cross-examination. *Thevis, supra,* 665 F.2d at 630.

lished that Devonshire was responsible for the witness's unavailability, he cannot prevent the introduction of this evidence on grounds that his right to confront the witness has been denied him. For essentially the same reasons, Devonshire also waived any hearsay objections to Ms. Harmon's out-of-court statements.[6] *See Houlihan, supra,* 92 F.3d at 1281 (by causing witness's unavailability, defendants "waived not only their confrontation rights but also their hearsay objections"); *United States v. Thai,* 29 F.3d 785, 814 (2d Cir.), *cert. denied,* 115 S.Ct. 456, 496, 115 S.Ct. 456, 993, 130 L.Ed.2d 364, 406 (1994); *Aguiar, supra; Mastrangelo, supra; Thevis, supra; Steele v. Taylor,* 684 F.2d 1193 (6th Cir.1982); *Balano, supra; United States v. White,* 838 F.Supp. 618, 621 (D.D.C. 1993); *Gettings, supra; Geraci, supra.*

### B. Burden of Proof

■ We also agree with *Houlihan, supra,* and the other federal appellate courts that have held that the government need only establish the predicate facts by a preponderance of the evidence. 92 F.3d at 1280.[7] The preponderance of evidence standard is the accepted standard in determining the admissibility of virtually all other kinds of evidence, and that standard is traditionally used in deciding preliminary fact questions. *Bourjaily v. United States,* 483 U.S. 171, 175–76, 107 S.Ct. 2775, 2778–79, 97 L.Ed.2d 144 (1987) (the Supreme Court uses the preponderance of evidence standard for admissibility determinations that hinge on prelimi-

nary factual questions); *United States v. Woodfolk,* 656 A.2d 1145, 1150 n. 14 (D.C. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1286, 134 L.Ed.2d 231 (1996) (preponderance of evidence is the accepted standard for preliminary fact questions); *Wells v. United States,* 407 A.2d 1081, 1089 (D.C.1979) (admissibility of allegedly coerced confession determined by preponderance of evidence standard).[8] We are satisfied that a different standard is not called for under these circumstances because imposing a higher "burden of proof on the government might encourage behavior which strikes at the heart of the justice system itself." *Mastrangelo, supra,* 693 F.2d at 273; *see Steele, supra,* 684 F.2d at 1202–03 (adopting waiver rule as based on public policy protecting integrity of the adversary process, and adopting preponderance of evidence standard).

Finally, as *Houlihan, supra,* and *Steele, supra,* explain, the circumstances relating to the admissibility of this kind of evidence are very similar to those applicable when considering the admissibility of co-conspirators' statements. We have held that such statements are admissible if the government proves the existence of a conspiracy to be "more likely than not," a "quantum of proof ... identical to that required by the preponderance of evidence standard." *See Butler v. United States,* 481 A.2d 431, 441 (D.C.1984). We see no reason that standard should not apply as well in these circumstances, where the introduction of evidence is being sought,

---

**6.** We have no occasion in this case to decide whether procuring or causing a witness's absence from the trial results in a waiver of all evidentiary objections. In *Aguiar,* for example, the court recognized that the admission of facially unreliable hearsay would raise a due process issue and stated that an objection that probative value is outweighed by prejudicial effect is not waived by procuring a witness's absence. *See Aguiar, supra,* 975 F.2d at 47; *see also Houlihan, supra,* 92 F.3d at 1282 (after holding that by killing the witness the defendant waived Confrontation Clause and hearsay objections based on the witness's absence, the court also rejected a claim that the evidence was so unreliable that it violated due process). Ms. Harmon's statements of identification to Detective Condra and her express identification of one of the assailants, both made fairly closely on the heels of the Rollins shooting, assuredly possessed minimal reliability.

**7.** *See also Aguiar, supra,* 975 F.2d at 47; *Mastrangelo, supra,* 693 F.2d at 273; *United States v. Potamitis,* 739 F.2d 784 (2d Cir.), *cert. denied,* 469 U.S. 934, 105 S.Ct. 332, 83 L.Ed.2d 269 (1984); *Steele v. Taylor,* 684 F.2d 1193, 1202 (6th Cir.1982), *cert. denied,* 460 U.S. 1053, 103 S.Ct. 1501, 1502, 75 L.Ed.2d 932 (1983); *Balano, supra,* 618 F.2d at 629; *United States v. White,* 838 F.Supp. 618 (D.D.C.1993).

**8.** The only application, that comes to mind, of a different standard being applied in this jurisdiction is the requirement that the government establish so-called "other crimes" evidence by clear and convincing evidence. *Daniels v. United States,* 613 A.2d 342 (D.C.1992); *see Drew v. United States,* 331 F.2d 85, 118 U.S.App. D.C. 11 (1964); *but see Huddleston v. United States,* 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988).

as was the case in *Butler*, as an exception to the hearsay rule. *See id.*

### C. Procedure For Admission

 Finally, Devonshire argues that the trial court erred in admitting the statements without affording him an evidentiary hearing to determine whether he procured Ms. Harmon's unavailability. He contends that the trial court improperly determined the issue solely by proffer. Devonshire raised this claim for the first time on appeal; therefore, we review for plain error. *See Daniels v. United States*, 613 A.2d 342, 347 n. 11 (D.C.1992). Against that standard, we find no basis for reversal. *See Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc) (Plain error is error "so prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial."). In this case, the trial court had before it, and relied upon, the evidence presented at several days of motions hearings in addition to the government's proffer.

We have often allowed trial judges to decide evidentiary issues without requiring an evidentiary hearing. For example, a proffer of evidence is the means by which the government establishes the predicate for admitting "other crimes" evidence. *See Daniels, supra*, 613 A.2d at 347. We also allow the defense to initially proceed by proffer in order to establish the predicates for admitting evidence that some other person committed the charged offense, *see Winfield v. United States*, 676 A.2d 1 (D.C.1996) (en banc), and to establish that the mandatory conditions exist to begin the process by which the defense seeks to obtain immunity for a prospective defense witness. *See Carter v. United States*, 684 A.2d 331, 344 (D.C. 1996) (en banc). We do not need to decide here whether the proffer alone would be sufficient because the trial court considered both the proffer and the evidence that had been presented during the other hearings.[9] That evidence and the uncontested proffer adequately informed the trial court's decision and fails to disclose any plain error.

Accordingly, the convictions of appellants are affirmed except for the conviction of appellant Devonshire for first degree felony murder; with respect to that conviction, the case is remanded for vacation of the conviction and sentence.

*Remanded in part, affirmed in part.*

---

9. Because we do not decide whether a party may proceed by proffer alone, we also do not decide the nature and extent of any proffer which might be necessary.