**Eugene ROBERSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 02–CF–1250.**

District of Columbia Court of Appeals.

Argued Oct. 2, 2008.

Decided Dec. 18, 2008.

Thomas D. Engle, with whom Sharon L. Burka was on the brief, for appellant.

Elizabeth H. Danello, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese III, and Elizabeth Trosman, Assistant United States Attorneys, were on the brief, for appellee.

Before REID, GLICKMAN, and KRAMER, Associate Judges.

GLICKMAN, Associate Judge:

A jury found appellant Eugene Roberson guilty of first-degree (premeditated) murder while armed, possession of a firearm during a crime of violence, and carrying a pistol without a license. Roberson asserts that the trial court violated his Sixth Amendment right of confrontation by admitting in evidence against him the testimonial hearsay statements of Anthony Lee, a witness who was killed before trial. The court admitted Lee's out-of-court statements after finding that Roberson had conspired to murder him to prevent him from testifying. Roberson challenges the sufficiency of the evidence to support that factual finding. Although we consider the question to be a close one, we are not persuaded that the trial court's finding was clearly erroneous. Accordingly, we uphold the court's determination that Roberson forfeited his right to object to the introduction of Lee's statements.

## I.

In interviews with the police and testimony before the grand jury, Lee claimed to have been a witness to events occurring on June 24, 2000, in an alley near 58th and Blaine Streets, N.E. Lee described an altercation in the alley between a drug dealer named Donnell Simms and a woman identified at trial as Monica Davis, during which Lee saw Simms hit Davis. As Davis left, Lee heard her say that she would return with her "peoples." Lee later saw appellant Roberson and a man named Suley Roberts enter the alley together and confront Simms. There was a brief argu-

ment, during which Lee saw Roberson hold a gun to Simms's head. Lee heard a gun shot, turned around, and saw Simms lying on the ground. Lee then fled from the scene.

Roberson was arrested in October 2000 and subsequently indicted for Simms's murder. Roberson's first trial ended in a mistrial. At his second trial, which resulted in his conviction, several witnesses implicated him as the person who shot Simms. Anthony Lee was not one of those witnesses, however. The parties stipulated that Lee had been killed on December 3, 2000, in the vicinity of 58th and Blaine Streets. Roberson did not dispute the government's representation to the court that the person who killed Lee was Suley Roberts.

Before the start of Roberson's second trial, the government moved in limine for the admission in evidence of Anthony Lee's out-of-court statements pursuant to the forfeiture-by-wrongdoing doctrine recognized in *Devonshire*[1] and other decisions of this court.[2] Relying primarily on the proffered testimony of a witness named Darren Redd, the government alleged that Roberson had procured Lee's unavailability by conspiring with Suley Roberts to murder Lee. In brief, the government proffered that Redd would testify that he witnessed the shootings of both Simms and Lee. Redd allegedly saw Roberson, accompanied by Roberts, shoot Simms in the alley at 58th and Blaine Streets on June 24, 2000. Redd saw Lee in the alley too, and Lee was visible to Simms's assailants. A month after the shooting, Roberson told Redd that he was looking for Lee because he had seen Lee get "snatched up" by the police and he wanted to know if Lee had

1. *Devonshire v. United States*, 691 A.2d 165, 168–69 (D.C.1997).

2. *See, e.g., Gatlin v. United States*, 925 A.2d 594, 599 (D.C.2007); *Crutchfield v. United States*, 779 A.2d 307, 328 (D.C.2001); *Sweet v. United States*, 756 A.2d 366, 379 (D.C.2000).

been "snitching." Thereafter, Redd was at the scene on December 3, 2000, when Suley Roberts shot and killed Lee. Finally, Redd also would testify that some months later, while he and Roberson were in jail awaiting trial, Roberson discussed his criminal case with Redd. Roberson allegedly showed Redd a copy of the affidavit in support of his arrest and said that the police had "messed up" the witnesses against him. Roberson told Redd that Lee (who was not identified by name in the affidavit) had been the "star witness" against him, but that he was not worried because Roberts "took care of that for me."

In addition to Redd's statements, the government proffered that Suley Roberts had been interviewed by the police and had admitted having spoken with Roberson several times by telephone between October and December (while Roberson was in jail awaiting trial). Several witnesses would testify at trial that Roberson and Roberts were close and hung out together in the vicinity of 58th and Blaine Streets. Finally, the government also proffered the testimony given at Roberson's first trial by Kim McLaughlin. McLaughlin, a prosecution witness, had testified that the police picked her up for questioning two months after Simms was murdered. When she returned home, Roberson and Roberts followed her into her house and, looking "real serious," asked her what she had told the police and whether the police were looking for them.

Roberson disputed the sufficiency of the government's evidentiary proffer, but he proffered no evidence to rebut it. Based on the proffer, the court found by a preponderance of the evidence that Roberson had conspired with Roberts to procure Lee's absence from trial, and thus had waived his objections to the admission of Lee's statements to the police and the grand jury.

At trial, to fulfill the evidentiary promise of its proffer, the government called Redd to the witness stand before seeking to introduce Lee's out-of-court statements. Redd refused to testify, however, despite being found in contempt of court. In his place, and out of the jury's presence, the government called police investigator Lewis Hagler, who testified that he had spoken with Redd several times in the previous month. Hagler summarized the information Redd had furnished to the police. Roberson raised no Sixth Amendment or hearsay objection to this testimony. Hagler's summary tracked the government's earlier proffer of Redd's anticipated testimony, except that Hagler omitted Redd's claim to have seen Roberts shoot Lee.[3] Hagler stated that Redd never contradicted himself or gave inconsistent versions of the facts, and that the police did not discover any inaccuracies in Redd's account. In exchange for Redd's truthful testimony, Hagler added, the government had promised to address his security concerns and speak to the parole board on his behalf. Regarding Redd's jailhouse conversation with Roberson about Lee, Hagler testified, again without objection from Roberson, that police had confirmed that the two men were incarcerated in the same cell block. Hagler also testified without objection that Suley Roberts had acknowledged to police having spoken by telephone with Roberson several times in the weeks before Lee was murdered.[4]

---

3. Presumably through inadvertence, the prosecutor neglected to ask Hagler what Redd had said about Lee's murder.

4. The government subsequently called Kim McLaughlin as a witness. Her testimony conformed to what she had said at Roberson's first trial and to what the government had

After Hagler testified, Roberson renewed his challenge to the sufficiency of the evidence that he had conspired with Roberts to procure Lee's unavailability. Crediting Hagler's testimony, the trial court adhered to its earlier ruling that Roberson had forfeited his confrontation rights. The court allowed the government to introduce Lee's statements to police and his testimony before the grand jury.

## II.

On appeal, Roberson contends that the record before the trial court does not support the admission of Lee's out-of-court statements pursuant to the doctrine of forfeiture by wrongdoing. Roberson mainly argues that the evidence was insufficient to prove by a preponderance that he conspired with Roberts to prevent Lee from testifying at trial. There is some force to Roberson's position, and as we shall discuss, the record is not all it might have been. Nonetheless, we are not persuaded to reject the trial court's fact-finding as clearly erroneous or to disturb its ruling on admissibility.

 Lee's statements to the police and his testimony to the grand jury constituted testimonial hearsay.[5] The government's introduction of those statements at

trial in Lee's absence therefore violated Roberson's Sixth Amendment right of confrontation, as well as the general rule against hearsay, unless Roberson had waived or forfeited his objections to their admission. Under the forfeiture-by-wrongdoing doctrine, a defendant forfeits his Sixth Amendment right to be confronted by a witness against him, as well as his objection to the introduction of hearsay, if he wrongfully procured the unavailability of that witness with the purpose of preventing the witness from testifying.[6] Furthermore, if the defendant conspired with another to prevent the witness from testifying, forfeiture ensues whether it was the defendant himself or another co-conspirator who made the witness unavailable-so long as the actor's misconduct "was within the scope of the conspiracy and reasonably foreseeable to the defendant."[7]

Like other rulings on the admissibility of evidence, the determination whether a defendant has forfeited his constitutional and evidentiary objections to the admission of an absent witness's hearsay statements is committed to the trial judge. In line with most other courts, we have held that "the government need only establish the predicate facts by a preponderance of the evi-

proffered she would say. Other witnesses confirmed the close association between Roberson and Roberts.

5. *See Crawford v. Washington,* 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) (declining to define the term "testimonial," but explaining that "it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations"); *see also Gatlin,* 925 A.2d at 597–601 (statements to grand jury are testimonial); *Lewis v. United States,* 938 A.2d 771, 780 (D.C.2007) (statements to police after emergency was resolved are testimonial).

6. *See Crawford,* 541 U.S. at 53–54, 124 S.Ct. 1354 (defendant has Sixth Amendment right

to confront maker of testimonial statements); *Devonshire,* 691 A.2d at 168–69 (defendant forfeits confrontation right and hearsay objection when he wrongfully procures witness's unavailability); *Giles v. California,* — U.S. —, —, 128 S.Ct. 2678, 2687, 171 L.Ed.2d 488 (2008) (forfeiture of Sixth Amendment right applies only if defendant procured witness's unavailability for the purpose of preventing the witness from testifying).

7. *United States v. Carson,* 372 U.S.App. D.C. 251, 279, 455 F.3d 336, 364 (2006); *see also Gatlin,* 925 A.2d at 599–600 (holding principles of co-conspirator liability applicable to forfeiture-by-wrongdoing doctrine).

dence."[8] We also have held that the trial judge has discretion to rule on the basis of a government proffer without holding an evidentiary hearing; this procedure is followed, most commonly, when the judge expects the proffered evidence to be adduced in the course of the trial.[9] A ruling on admissibility based on a mere proffer is contingent, however—the judge's evidentiary expectations must be fulfilled.[10]

In fulfilling its proffer in this case, the government ran into a snag when Redd, whose anticipated testimony implicating Roberson in Lee's murder was essential to the court's ruling, refused to testify. Instead of eliciting sworn testimony from Redd directly, the government was obliged to rely on Hagler's report of Redd's out-of-court statements to the police. But this was not necessarily an insuperable setback. In principle, a trial court may rely on trustworthy hearsay in ruling on questions of admissibility, even where (as in this case) the question concerns the defendant's constitutional rights.[11] We do note

the fact that Redd's statements to the police (like Lee's statements) constituted not just ordinary hearsay, but testimonial hearsay subject to the requirements of the Sixth Amendment's Confrontation Clause.[12] Notwithstanding the general rule that a court may rely on hearsay in deciding whether evidence is admissible, it is an open question whether the Confrontation Clause allows the court to rely on testimonial hearsay that is not subject to cross-examination in ruling on the admissibility of evidence against a criminal defendant. We have found little post-*Crawford* authority on point.[13] However, Roberson did not object on Sixth Amendment grounds to the trial court's consideration of testimonial hearsay in this context, nor has he raised that objection on appeal. We therefore decline to reach the question.

■ The issue raised by Roberson on appeal is whether the trial court had sufficient evidence (including the testimonial hearsay) to support its factual finding that Roberson conspired with Suley Roberts to

---

**8.** *Devonshire,* 691 A.2d at 169; *see also Gatlin,* 925 A.2d at 601 ("[W]e see no reason to conclude that *Crawford* mandates a higher standard of proof in forfeiture by wrongdoing cases[.]").

**9.** *Crutchfield,* 779 A.2d at 330; *see also Devonshire,* 691 A.2d at 170.

**10.** *See Crutchfield,* 779 A.2d at 330 (noting that "the trial court recognized explicitly that it would have to monitor the evidence at trial to ensure that the proffer was fulfilled and that the equation of admissibility remained valid"); *Anderson v. United States,* 857 A.2d 451, 458 n. 6 (D.C.2004) (remedies for unfulfilled proffer include limiting instructions, restricting government's closing argument, and mistrial) (citing *Daniels v. United States,* 613 A.2d 342, 347 (D.C.1992)).

**11.** *See, e.g., United States v. Matlock,* 415 U.S. 164, 172–75, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) (approving trial court's consideration of reliable hearsay in hearing on motion to

suppress evidence seized in violation of defendant's Fourth Amendment rights); *Fleming v. United States,* 923 A.2d 830, 835 (D.C.2007) (same). The general principle, as expressed in Federal Rule of Evidence 104(a), is that in determining the admissibility of evidence, the court "is not bound by the rules of evidence except those with respect to privileges." *See also* Fed.R.Evid. 104 advisory committee's note to subdivision (a); *Bourjaily v. United States,* 483 U.S. 171, 174, 178, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987).

**12.** For that matter, it would appear that Hagler also recited testimonial hearsay when he reported Suley Roberts's statements to police and the confirmation by other officers that Redd and Roberson were in jail together.

**13.** *But see United States v. Morgan,* 505 F.3d 332, 339 (5th Cir.2007) (holding that "*Crawford* does not apply to the foundational evidence authenticating business records in preliminary determinations of the admissibility of evidence").

kill Anthony Lee in order to prevent Lee from testifying at trial. In our view, the question is a close one; the government's proof of the conspiracy was hardly overwhelming. However, the preponderance standard means that the fact in issue needs only to be proved more likely true than not,[14] and we will not overturn a trial court's factual finding in connection with a ruling on admissibility unless it is clearly erroneous.[15] Deferring, as we must, to the trial court's prerogatives in weighing the evidence, assessing witness credibility, and drawing reasonable inferences, we do not find clear error in its determination by a preponderance of the evidence that Roberson conspired with Roberts to procure Lee's unavailability as a witness. The trial court was entitled to find that Redd's unimpeached (and, to a degree, corroborated) statements were reliable. It could reach the same conclusion as to the other hearsay recounted by Hagler. That evidence, in conjunction with the parties' stipulation regarding Lee's murder and the trial testimony of McLaughlin and other witnesses, established that Roberson was keenly interested in the witnesses who were cooperating with the prosecution; that Roberson knew Lee had seen him murder Simms; that Roberson feared Lee was "snitching" on him; that Roberson had been looking for Lee, just as he and Roberts had gone looking for another potential witness against them (McLaughlin); that Roberson and Roberts were close associates; that after his arrest, Roberson spoke with Roberts several times by telephone; and that later, after Lee was killed, Roberson

said he was no longer worried about Lee, whom he called the government's "star witness" against him, because Roberts "had taken care of that for him." The trial court reasonably could construe those words as an admission by Roberson not only that it was his friend Roberts who killed Lee, but that Roberts did so in order to prevent Lee from testifying against Roberson (and, presumably, against Roberts too). No other motive for Roberts to kill Lee was identified. Furthermore, Roberson's statement also suggests that he and Roberts had discussed Lee's murder; and if Roberts confided to Roberson that he shot Lee, the inference that Roberts and Roberson were conspirators is strengthened (for otherwise, why would Roberts admit the murder to Roberson?). While other inferences are possible, we think that the foregoing facts in their totality permitted the trial court to find it more likely than not that Roberson and Roberts had planned to eliminate Lee as a witness.

It is true that there was a gap in both the government's proof and the trial court's findings. Although the government had proffered that Redd saw Roberts kill Lee, Hagler did not testify to this fact, and the court did not make an express finding on the point. Nonetheless, Roberson effectively admitted to Redd that Roberts killed Lee, and Roberson never disputed that fact at trial. We are satisfied that the trial court reasonably could find, and implicitly did find, that Roberts carried out his conspiracy with Roberson by murdering Lee.

**14.** *Devonshire,* 691 A.2d at 169 (citing *Butler v. United States,* 481 A.2d 431, 441 (D.C. 1984)).

**15.** *See, e.g., United States v. Woodfolk,* 656 A.2d 1145, 1150 n. 14 (D.C.1995) (determination by preponderance of evidence that state-

ment was excited utterance is reviewed under "clearly erroneous" standard); *Carson,* 372 U.S.App. D.C. at 277, 455 F.3d at 362 (reviewing trial court's finding that defendants conspired to cause witness unavailability for "clear error").

As the trial court's findings were not clearly erroneous, we hold that the court did not err in admitting Lee's out-of-court statements against Roberson under the forfeiture-by-wrongdoing doctrine. Roberson's convictions are hereby *affirmed.*